IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| AMWAY CORP. ,<br>A Virginia Corporation, and<br>AMWAY CANADA<br>CORPORATION,<br>An Ontario, Canada Corporation<br><br>Plaintiffs,<br><br>v.<br><br>BHIP GLOBAL, INC.,<br>a Texas Corporation,<br>TERRY LACORE, an individual,<br>KOSTA GARA , an individual,<br>TEAM IN MOTION, LLC,<br>SUCCESS MASTERY<br>COMPANY,<br>MANAGEMENT BUSINESS<br>SERVICES, LLC,<br>ANGEL VALLEY<br>DEVELOPMENTS, LLC,<br>BUSINESS EMPOWERMENT<br>SOLUTIONS TEAM, LLC,<br>ALLEN VENTURE<br>ENTERPRISES, LLC, and,<br>NEVADA WEALTH<br>STRATEGISTS, LLC<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL ACTION NO.<br><br>_____<br><br>**JURY TRIAL DEMANDED** |

## PLAINTIFFS' ORIGINAL COMPLAINT

TO THE HONORABLE COURT:

COMES NOW, PLAINTIFFS, AMWAY CORP. (hereinafter referred to separately as "AMWAY CORP.") and AMWAY CANADA CORPORATION (hereinafter separately referred to as "AMWAY CANADA") (collectively AMWAY CORP. and AMWAY CANADA will hereinafter be referred to as "Plaintiffs" or "Amway"), and files this Plaintiffs' Original Complaint, complaining of DEFENDANTS, BHIP GLOBAL, INC. (hereinafter referred to as "BHIP" when distinction is necessary), TERRY LACORE (hereinafter referred to as "LACORE" when distinction is necessary), and KOSTA GARA, also known by the name of "Kosta Kasa Gharagozloo" (hereinafter referred to as "GARA" when distinction is necessary), TEAM IN MOTION, LLC (hereinafter referred to as "TEAM IN MOTION" when distinction is necessary), SUCCESS MASTERY COMPANY, (hereinafter referred to as "SUCCESS MASTERY" when distinction is necessary), MANAGEMENT BUSINESS SERVICES, LLC, (hereinafter referred to as "MANAGEMENT BUSINESS SERVICES" when distinction is necessary), ANGEL VALLEY DEVELOPMENTS, LLC, (hereinafter referred to as "ANGEL VALLEY" when distinction is necessary), BUSINESS EMPOWERMENT SOLUTIONS TEAM, LLC, (hereinafter referred to as "BUSINESS EMPOWERMENT" when distinction is necessary), ALLEN VENTURE ENTERPRISES, LLC, (hereinafter referred to as "ALLEN VENTURE" when distinction is necessary) and, NEVADA WEALTH

STRATEGISTS, LLC (hereinafter referred to as "NEVADA WEALTH" when distinction is necessary), (BHIP, LACORE, GARA, TEAM IN MOTION, SUCCESS MASTERY, MANAGEMENT BUSINESS SERVICES, ANGEL VALLEY, BUSINESS EMPOWERMENT, ALLEN VENTURE, and NEVADA WEALTH will hereinafter be collectively referred to as "Defendants" when the context requires), and for its cause of action would respectfully show unto the Court the following:

## I.

## NATURE OF THE ACTION

1.     This is an action for, *inter alia*, unfair competition, violations of the Lanham Act, 15 U.S. C. § 1125(a), misappropriation of trade secrets, conversion, violation of the Texas Theft Liability Act, TEX. CIV. PRAC. & REM. CODE Chapter 134, and TEX. PENAL CODE § 31.03, tortious interference with exiting contractual relationships, tortious interference with prospective business relationships, civil conspiracy, assisting and encouraging, concert of action by Defendants, joint enterprise by Defendants, and for declaratory relief under the Declaratory Judgment Act, 28 U.S.C § 2201.

2.     Plaintiffs sell and distribute through independent distributors, also known as Independent Business Owners ("IBOs") consumer products and services in, *inter alia,* the United States and Canada.  Among others, Plaintiffs sell and

distribute energy drinks and sports drinks.  BHIP sells and distributes products that compete with the products sold by Plaintiffs.  BHIP utilizes a marketing structure and business enterprise that markets through independent distributors products or services that compete with the products or services of the Plaintiffs and that are functionally interchangeable with the products or services offered are marketed by the Plaintiffs.  BHIP utilizes independent distributors in a direct sales program using a multilevel or network marketing structure which competes with the multilevel and network marketing structure used by Plaintiffs to sell and distribute Plaintiffs' products and services.

       3.     BHIP, LACORE, GARA and TEAM IN MOTION unlawfully solicited and recruited a successful Amway IBO couple to join BHIP in clear violation of the IBOs' contract with Plaintiffs and to unlawfully compete against Plaintiffs.  BHIP, LACORE, GARA and TEAM IN MOTION induced Casey and Jeannie Combden IBOs to breach their contract with Plaintiffs by agreeing to pay the Casey Combden $10,000.00 per week to join BHIP and to misappropriate Plaintiffs' trade secrets and to utilize those trade secrets to solicit and recruit other IBOs in their Amway downline to breach their contracts with Plaintiffs by joining BHIP.  BHIP paid Casey Combden $10,000.00 per week to breach his and his wife's contract with Plaintiffs, and to misappropriate Plaintiffs' trade secrets and to join BHIP as an agent/ distributor.

4.    Casey and Jeannie Combden, at the insistence and inducement of BHIP, LACORE, GARA and TEAM IN MOTION, and for the payment of $10,000.00 per week, breached their contract with Plaintiffs and misappropriated Plaintiffs' trade secrets and used Plaintiffs' trade secrets to register and sponsor Plaintiffs' IBOs in the downline of the Combdens to enter into contracts with BHIP and to unlawfully compete with Plaintiffs.

5.    Casey and Jeannie Combden, for the payment of $10,000.00 per week from BHIP, misappropriated Plaintiffs' trade secrets and used Plaintiffs' trade secrets to register and sponsor downline BHIP agents/distributors for multiple companies that Casey Combden had consulting agreements with. Casey Combden registered multiple IBOs under contract with Plaintiffs' into BHIP for SUCCESS MASTERY, MANAGEMENT BUSINESS SERVICES, ANGEL VALLEY, BUSINESS EMPOWERMENT, ALLEN VENTURE and NEVADA WEALTH. These IBOs and their Line of Sponsorship ("LOS") are trade secrets of Plaintiffs. Casey Combden has a verbal "variable profits" consulting agreement with SUCCESS MASTERY, MANAGEMENT BUSINESS SERVICES, ANGEL VALLEY, BUSINESS EMPOWERMENT, ALLEN VENTURE and NEVADA WEALTH, but he will obtain a "majority" of the profits  earned by these companies.

6.     SUCCESS MASTERY, MANAGEMENT BUSINESS SERVICES, ANGEL VALLEY, BUSINESS EMPOWERMENT, ALLEN VENTURE and NEVADA WEALTH are all BHIP agents/distributors and have entered into contracts with BHIP that are enforceable and performable in Collin County, Texas. SUCCESS MASTERY, MANAGEMENT BUSINESS SERVICES, ANGEL VALLEY, BUSINESS EMPOWERMENT, ALLEN VENTURE and NEVADA WEALTH have used the trade secrets misappropriated by Casey Combden to develop their BHIP multilevel or network marketing BHIP business.

7.     The misappropriation of Plaintiffs' trade secrets has caused, and will continue to cause irreparable harm to Plaintiffs and its other IBOs in the LOS.

8.     BHIP has adopted Rules that prohibit targeting other multilevel marketing companies; but, BHIP does not enforce its own rules.  It ignores them. It blatantly encourages its distributors to unlawfully recruit and to unlawfully target successful distributors in other competing multilevel marketing businesses.  This is not the first instance in which BHIP, LACORE and GARA have misappropriated trade secrets of a competitor and interfered with a competitor's contract with its distributors in a multilevel business.  Recently, a Dallas district court entered a temporary injunction against BHIP, LACORE ad GARA for misappropriating trade secrets of a competitor and for interference with a competitor's contract with its distributors.  LACORE, BHIP and GARA know that misappropriation of trade

secrets and interference with a contract is unlawful; yet they continue to violate the law.

## II.

## PARTIES

### a.    Plaintiffs

9.    AMWAY CORP. is a Virginia corporation, organized and existing under the laws of the State of Virginia, and has its principal place of business in the State of Michigan.

10.    AMWAY Canada, is an Ontario, Canada Corporation, organized and existing under the laws of Ontario Canada, and has its principal place of business in London, Ontario, Canada.

### b.    Defendants

11.    Defendant, BHIP is a Texas corporation organized and existing under the laws of the State of Texas.  BHIP has its principal place of business and corporate headquarters and principal office located in Collin County, Texas, whose address is listed with the Texas Secretary of State as 522 Lacore Ln., Melissa, Texas 75454.  BHIP has appointed Terry LaCore as its registered agent in the State of Texas for service of process.  BHIP lists with the Texas Secretary of State 3105 Brookhollow Lane, Flower Mound, Texas 75028 as the address for its registered agent.  BHIP's registered agent has not resided at that address for some time.

BHIP's corporate filing is erroneous.  Terry Lacore, BHIP's registered agent, resides in Collin County, Texas at an unlisted and undisclosed location.  BHIP's registered agent may be found wherever the registered agent maybe found in Collin County, Texas.

12.    On August 28, 2009, the Texas Secretary of State forfeited the Certificate and Charter of BHIP pursuant to section 171.309 of the Texas Tax Code.  The Texas Secretary of State took this action based upon information received from the Texas Comptroller of Public Accounts indicating that there were grounds for the forfeiture of BHIP's charter, certificate or registration.  The Texas Comptroller of Public Accounts determined that BHIP did not revive its forfeited privileges within 120 days after the date that the privileges were forfeited.  On November 6, 2009, BHIP applied to the Texas Secretary of State for reinstatement and request to set aside its tax forfeiture.  As of this date, the corporate privileges of BHIP are active.

13.    Defendant, TERRY LACORE, is an individual and resident of Collin County Texas, and resides in Melissa, Texas at an undisclosed location.  This Defendant is a citizen of Texas.  This Defendant is conducting business with Defendant, BHIP, in Collin County, Texas and has made significant contacts with Defendant, BHIP in Collin County, Texas.  Plaintiffs request that service of process on this Defendant be by serving Defendant where ever he may be found in

8

Collin County, Melissa, Texas 75454, or wherever else the Defendant maybe found in any other location.

**KOSTA GARA**

14.    Defendant, KOSTA GARA, is an individual and is an alien.  This Defendant is conducting business with Defendant, BHIP, in Collin County, Texas and has made significant contacts with Defendant, BHIP in Collin County, Texas. According to BHIP, GARA is a "cofounder" of BHIP and BHIP's "master distributor."  According to BHIP, GARA uses BHIP "corporate positions" in the BHIP LOS to sponsor people he recruits into BHIP.  According to BHIP, GARA is a member of the BHIP "corporate team."  Plaintiffs request that service of process on this Defendant be by serving GARA wherever the Defendant maybe found. GARA has not registered to do business in the State of Texas with the Texas Secretary of State.  GARA has not provided a registered agent for GARA that may be served in the State of Texas.

14A.  GARA traveled to the State of Texas to meet with LACORE and to negotiate his BHIP contract and business relationship with BHIP.  GARA met with LACORE in Texas regarding his BHIP contract and business relationship with BHIP.

14B.  GARA has a contract with BHIP performable, in whole or in part, in the State of Texas.  GARA is not a resident of the State of Texas.  GARA has

personally availed himself of the privilege of conducting and transacting business in the State of Texas, and in Collin County, Texas with BHIP.  GARA has contracted by mail, web or otherwise with a Texas resident, BHIP, and GARA and BHIP are to perform the contract in whole or in part in the State of Texas.

14C.  GARA's actions, as described herein, are a tort committed in whole or in part in the State of Texas.

14D. GARA has solicited and recruited directly, or through an intermediary, BHIP, located in the State of Texas, for employment as a BHIP agent/distributor.

14E.  GARA has, and continues, to directly and intentionally market goods and services -- BHIP products and BHIP sponsorships -- in Texas.  GARA has directly and intentionally sought a benefit, advantage or profit by availing himself of the benefits of his contract in Texas with BHIP.

14F.  GARA earns profits in Texas from his BHIP contract and business relationship, and utilizes the BHIP website to promote his BHIP business, to recruit others, to solicit others, to order BHIP products and services, to pay for BHIP products and services, and to advertise in Texas GARA's BHIP products and services.  Through BHIP and its business operations in Texas, GARA has used BHIP to market and sell BHIP products and services to BHIP agents/distributors in the downline LOS of GARA in BHIP.

14G.  In Texas, BHIP provides GARA with substantial business support for GARA's BHIP business including, but not limited to, administrative support, customer support, product support, product training, business support materials, business training activities, product information, financial, webinars and advertising, and business and distributor records and support.  BHIP provides the same support for GARA's downline BHIP agents/distributors in Texas.  GARA earns profits in Texas from the business support received from BHIP in Texas for his downline BHIP agents/distributors.  This civil action arises out of or is related to these activities of GARA and BHIP occurring in Texas.

14I.  GARA engages in business in the State of Texas, but does not maintain a regular place of business in Texas or a designated agent for service of process in Texas.  This proceeding arises out of the business done in Texas by GARA and to which the nonresident is a party.  GARA has, consequently, appointed the Texas Secretary of State as his agent for service of process.  TEX. CIV. PRAC. REM. CODE §17.044.  Plaintiffs request that summons be issued and served on the Texas Secretary of State for this Defendant.

**TEAM IN MOTION**

15.  Defendant, TEAM IN MOTION, is a limited liability company organized under the laws of the State of Nevada.  GARA is the manager for TEAM IN MOTION, and lists an address for GARA of P.O. Box 3326, Mesquite, NV

89024.  The Nevada Secretary of State lists Advantage Corporation Services, Inc. as the registered agent for TEAM IN MOTION with an address of 450 Hillside Dr. Bldg. B, Suite 200, Mesquite, Nevada 89027.

15A.  This Defendant is conducting business with Defendant, BHIP, in Collin County, Texas and has made significant contacts with Defendant, BHIP in Collin County, Texas.  Plaintiffs request that service of process on this Defendant be by serving TEAM IN MOTION wherever the Defendant maybe found.  TEAM IN MOTION has not registered to do business in the State of Texas with the Texas Secretary of State.  TEAM IN MOTION has not provided a registered agent for TEAM IN MOTION that may be served in the State of Texas.

15B.  TEAM IN MOTION is used by Defendant GARA to promote, recruit, and solicit others to join BHIP as part of TEAM IN MOTION's and GARA's "team" in BHIP.  GARA used TEAM IN MOTION to recruit and solicit Casey and Jeannie Combden to join BHIP and to breach their contract with Plaintiffs.  TEAM IN MOTION has a contract which is performable, in whole or in part, in the State of Texas.  TEAM IN MOTION is not a resident of the State of Texas.  TEAM IN MOTION has personally availed itself of the privilege of conducting and transacting business in the State of Texas, and in Collin County, Texas.  TEAM IN MOTION is authorized by BHIP to promote and sell BHIP business support materials and products.

15C.   TEAM IN MOTION has contracted by mail, web or otherwise with a Texas resident, BHIP, and GARA to perform services and a contract in whole or in part in the State of Texas.

15D.  TEAM IN MOTION's actions, as described herein, are a tort committed in whole or in part in the State of Texas.

15E.   TEAM IN MOTION has solicited and recruited directly, or through an intermediary, BHIP, located in the State of Texas, for BHIP agents and distributors in Texas.

15F.   TEAM IN MOTION has, and continues, to directly and intentionally market goods and services -- BHIP products and BHIP sponsorships -- in Texas. TEAM IN MOTION has directly and intentionally sought a benefit, advantage or profit by availing itself of the benefits of its contract in Texas.

15G.  TEAM IN MOTION earns profits in Texas from its BHIP contract and business relationship with BHIP, and utilizes the BHIP website to promote TEAM IN MOTION's business and to recruit others, to solicit others, to order BHIP products and services, to pay for BHIP products and services, and to advertise in Texas TEAM IN MOTION's BHIP products and services.  Through BHIP and its business operations in Texas, TEAM IN MOTION has used BHIP to market and sell BHIP products and services to BHIP agents/distributors in Texas and elsewhere.

15H. BHIP provides in Texas TEAM IN MOTION with substantial business support for TEAM IN MOTION's BHIP business including, but not limited to, administrative support, customer support, product support, product training, business support materials, business training activities, product information, financial, webinars and advertising, and business and distributor records and support.  BHIP provides in Texas the same support for TEAM IN MOTION's and GARA's downline BHIP agents/distributors.    TEAM IN MOTION earns profits in Texas from the business support received from BHIP in Texas for its downline BHIP agents/distributors.  This civil action arises out of or is related to these activities of TEAM IN MOTION and BHIP occurring in Texas.

15I.    TEAM IN MOTION engages in business in the State of Texas, but does not maintain a regular place of business in Texas or a designated agent for service of process in Texas.  This proceeding arises out of the business done in Texas by TEAM IN MOTION and to which the nonresident is a party.  TEAM IN MOTION has, consequently, appointed the Texas Secretary of State as its agent for service of process.  TEX. CIV. PRAC. REM. CODE §17.044.  Plaintiffs request that summons be issued and served on the Texas Secretary of State for this Defendant.

**SUCCESS MASTERY**

16. Defendant, SUCCESS MASTERY, is a Company whose organization is unknown. Casey Combden is a stockholder and partner for SUCCESS MASTERY, and he may be served with process for SUCCESS MASTERY at 26-4 Vata Crt, Aurora, On Canada L4G-4B6.

16A. This Defendant is conducting business with Defendant, BHIP, in Collin County, Texas and has made significant contacts with Defendant, BHIP in Collin County, Texas. Plaintiffs request that service of process on this Defendant be by serving SUCCESS MASTERY wherever the Defendant maybe found. SUCCESS MASTERY has not registered to do business in the State of Texas with the Texas Secretary of State. SUCCESS MASTERY has not provided a registered agent for SUCCESS MASTERY that may be served in the State of Texas.

16B. SUCCESS MASTERY used Plaintiffs' trade secrets to promote, recruit, and solicit others to join BHIP as part of SUCCESS MASTERY's "team" in BHIP. SUCCESS MASTERY has recruited and solicited Plaintiffs' IBOs to join BHIP and to breach their contract with Plaintiffs. SUCCESS MASTERY has registered and sponsored Plaintiffs' IBOs in BHIP by using BHIP's services in Texas and BHIP's website located in Texas. SUCCESS MASTERY has used BHIP employees and agents in Texas to assist SUCCESS

MASTERY in recruiting and soliciting Plaintiffs' IBOs to breach their contracts with Plaintiffs.    SUCCESS MASTERY has used Plaintiffs' trade secrets misappropriated by Casey and Jeannie Combden to sponsor and register Plaintiffs IBOs into BHIP through multiple contacts with BHIP agents in Texas and through the BHIP Texas website

16C.       SUCCESS MASTERY COMPANY is a BHIP agent or distributor and has a contract with BHIP.   SUCCESS MASTERY COMPANY negotiated its contract with BHIP, GARA and LACORE, a Texas resident, while BHIP and LACORE were in Texas.   SUCCESS MASTERY COMPANY has a contract which is performable, in whole or in part, in the State of Texas.

16D.       SUCCESS MASTERY is not a resident of the State of Texas. SUCCESS MASTERY has personally availed itself of the privilege of conducting and transacting business in the State of Texas, and in Collin County, Texas. SUCCESS MASTERY is authorized by BHIP to promote and sell BHIP business support materials and products.

16E.       SUCCESS MASTERY has contracted by mail, web or otherwise with a Texas resident, BHIP, to perform services and a contract in whole or in part in the State of Texas.

16F.       SUCCESS MASTERY's actions, as described herein, are a tort committed in whole or in part in the State of Texas.

16G.        SUCCESS MASTERY has solicited and recruited directly, or through an intermediary, BHIP, located in the State of Texas, for BHIP agents and distributors in Texas, and has sponsored Plaintiffs' IBOs into BHIP through the BHIP corporate services offered in Texas.

16H.        SUCCESS MASTERY has, and continues, to directly and intentionally market goods and services -- BHIP products and BHIP sponsorships -- in Texas.  SUCCESS MASTERY has directly and intentionally sought a benefit, advantage or profit by availing itself of the benefits of its contract with BHIP in Texas.

16I.        SUCCESS MASTERY earns profits in Texas from its BHIP contract and business relationship with BHIP, and utilizes the BHIP website to promote SUCCESS MASTERY's business and to recruit others, to solicit others, to order BHIP products and services, to pay for BHIP products and services, and to advertise in Texas SUCCESS MASTERY's BHIP products and services.  Through BHIP and its business operations in Texas, SUCCESS MASTERY has used BHIP to market and sell BHIP products and services to BHIP agents/distributors in Texas and elsewhere.

16J.        BHIP provides SUCCESS MASTERY, in Texas, with substantial business support for SUCCESS MASTERY's BHIP business including, but not limited to, administrative support, customer support, product support,

product training, business support materials, business training activities, product information, financial, webinars and advertising, and business and distributor records and support.  In Texas, BHIP provides the same support for SUCCESS MASTERY's downline BHIP agents/distributors.  SUCCESS MASTERY earns profits in Texas from the business support received from BHIP in Texas for its downline BHIP agents/distributors.  This civil action arises out of or is related to these activities of SUCCESS MASTERY and BHIP occurring in Texas.

16K.    SUCCESS MASTERY engages in business in the State of Texas, but does not maintain a regular place of business in Texas or a designated agent for service of process in Texas.  This proceeding arises out of the business done in Texas by SUCCESS MASTERY and to which the nonresident is a party. SUCCESS MASTERY has, consequently, appointed the Texas Secretary of State as its agent for service of process.  TEX. CIV. PRAC. REM. CODE §17.044. Plaintiffs request that summons be issued and served on the Texas Secretary of State for this Defendant.

**MANAGEMENT BUSINESS SERVICES**

17.    Defendant, MANAGEMENT BUSINESS SERVICES, is a Company organized under the laws of the State of Nevada.  The Manager for MANAGEMENT BUSINESS SERVICES is Lorrie Edelblute, whose address is 6440 Sky Point Dr. #140-101, Las Vegas, Nevada 89131.  The registered agent for

MANAGEMENT BUSINESS SERVICES is "Complete Corporate Solutions," whose address is 7065 W. Ann Rd. #130-679, Las Vegas, Nevada 89103.

17A.    Casey Combden, a former IBO of Plaintiffs, is a consultant for MANAGEMENT BUSINESS SERVICES and has entered into a "verbal" "consulting" agreement providing that he is to be paid a "variable percentage" of the "profits" of MANAGEMENT BUSINESS SERVICES.  He expects to receive a "majority" of the "profits" of MANAGEMENT BUSINESS SERVICES.  Casey Combden, while an IBO of Plaintiffs, misappropriated trade secrets of Plaintiffs and gave those trade secrets to MANAGEMENT BUSINESS SERVICES. MANAGEMENT BUSINESS SERVICES used Plaintiffs' trade secrets to register and sponsor Plaintiffs' IBOs into the BHIP downline of MANAGEMENT BUSINESS SERVICES, and to cause the BHIP downline agents and distributors to breach their contracts with Plaintiffs.

17B.    This Defendant is conducting business with Defendant, BHIP, in Collin County, Texas and has made significant contacts with Defendant, BHIP in Collin County, Texas.   Plaintiffs request that service of process on this Defendant be by serving MANAGEMENT BUSINESS SERVICES wherever the Defendant maybe found.   MANAGEMENT BUSINESS SERVICES has not registered to do business in the State of Texas with the Texas Secretary of State. MANAGEMENT BUSINESS SERVICES has not provided a registered agent for

MANAGEMENT BUSINESS SERVICES that may be served in the State of Texas.

17C.    MANAGEMENT BUSINESS SERVICES used Plaintiffs' trade secrets to promote, recruit, and solicit Plaintiffs' IBOs to join BHIP as part of MANAGEMENT BUSINESS SERVICES's "team" in BHIP.  MANAGEMENT BUSINESS SERVICES has recruited and solicited Plaintiffs' IBOs to join BHIP and to breach their contract with Plaintiffs.  MANAGEMENT BUSINESS SERVICES has registered and sponsored Plaintiffs' IBOs in BHIP by using BHIP's services in Texas and BHIP's website located in Texas.  MANAGEMENT BUSINESS SERVICES has used BHIP employees and agents in Texas to assist MANAGEMENT BUSINESS SERVICES in recruiting and soliciting Plaintiffs' IBOs to breach their contracts with Plaintiffs.  MANAGEMENT BUSINESS SERVICES has used trade secrets misappropriated by Casey and Jeannie Combden to sponsor and register Plaintiffs' IBOs into BHIP through multiple contacts with BHIP agents in Texas and through the BHIP Texas website.

17D.    MANAGEMENT BUSINESS SERVICES is a BHIP agent or distributor and has a contract with BHIP.  MANAGEMENT BUSINESS SERVICES negotiated its contract with BHIP, GARA and LACORE, a Texas resident, while BHIP and LACORE were in Texas.  MANAGEMENT BUSINESS

SERVICES has a contract which is performable, in whole or in part, in the State of Texas.

17E.     MANAGEMENT BUSINESS SERVICES is not a resident of the State of Texas.  MANAGEMENT BUSINESS SERVICES has personally availed itself of the privilege of conducting and transacting business in the State of Texas, and in Collin County, Texas.  MANAGEMENT BUSINESS SERVICES is authorized by BHIP to promote and sell BHIP business support materials and products.

17F.     MANAGEMENT BUSINESS SERVICES has contracted by mail, web or otherwise with a Texas resident, BHIP, to perform services and a contract in whole or in part in the State of Texas.

17G.     MANAGEMENT BUSINESS SERVICES's actions, as described herein, are a tort committed in whole or in part in the State of Texas.

17H.     MANAGEMENT BUSINESS SERVICES has solicited and recruited directly, or through an intermediary, BHIP, located in the State of Texas, for BHIP agents and distributors in Texas, and has sponsored Plaintiffs' IBOs into BHIP through the BHIP corporate services offered in Texas.

17I.     MANAGEMENT BUSINESS SERVICES has, and continues, to directly and intentionally market goods and services -- BHIP products and BHIP sponsorships -- in Texas.  MANAGEMENT BUSINESS SERVICES has directly

and intentionally sought a benefit, advantage or profit by availing itself of the benefits of its contract with BHIP in Texas.

17J.    MANAGEMENT BUSINESS SERVICES earns profits in Texas from its BHIP contract and business relationship with BHIP, and utilizes the BHIP website to promote MANAGEMENT BUSINESS SERVICES's business and to recruit others, to solicit others, to order BHIP products and services, to pay for BHIP products and services, and to advertise in Texas MANAGEMENT BUSINESS SERVICES's BHIP products and services.  Through BHIP and its business operations in Texas, MANAGEMENT BUSINESS SERVICES has used BHIP to market and sell BHIP products and services to BHIP agents/distributors in Texas and elsewhere.

17K.    BHIP provides in Texas MANAGEMENT BUSINESS SERVICES with substantial business support for MANAGEMENT BUSINESS SERVICES's BHIP business including, but not limited to, administrative support, customer support, product support, product training, business support materials, business training activities, product information, financial, webinars and advertising, and business and distributor records and support.  BHIP provides in Texas the same support for MANAGEMENT BUSINESS SERVICES's downline BHIP agents/distributors.  MANAGEMENT BUSINESS SERVICES earns profits in Texas from the business support received from BHIP in Texas for its downline

BHIP agents/distributors.  This civil action arises out of or is related to these activities of MANAGEMENT BUSINESS SERVICES and BHIP occurring in Texas.

17L.    MANAGEMENT BUSINESS SERVICES engages in business in the State of Texas, but does not maintain a regular place of business in Texas or a designated agent for service of process in Texas.  This proceeding arises out of the business done in Texas by MANAGEMENT BUSINESS SERVICES and to which the nonresident is a party.  MANAGEMENT BUSINESS SERVICES has, consequently, appointed the Texas Secretary of State as its agent for service of process.   TEX. CIV. PRAC. REM. CODE §17.044.   Plaintiffs request that summons be issued and served on the Texas Secretary of State for this Defendant.

**ANGEL VALLEY**

18.    Defendant, ANGEL VALLEY, is a Company organized under the laws of the State of Nevada.  The Manager for ANGEL VALLEY is Lorrie Edelblute, whose address is 6440 Sky Point Dr. #140-101, Las Vegas, Nevada 89131.  The registered agent for ANGEL VALLEY is "Complete Corporate Solutions," whose address is 7065 W. Ann Rd. #130-679, Las Vegas, Nevada 89103.

18A.    Casey Combden, a former IBO of Plaintiffs, is a consultant for ANGEL VALLEY and has enter into a "verbal" "consulting" agreement providing

that he is to be paid a "variable percentage" of the "profits" of ANGEL VALLEY. He expects to receive a "majority" of the "profits" of ANGEL VALLEY. Casey Combden, while an IBO of Plaintiffs, misappropriated trade secrets of Plaintiffs and gave those trade secrets to ANGEL VALLEY. ANGEL VALLEY used Plaintiffs' trade secrets to register and sponsor Plaintiffs' IBOs into the BHIP downline of ANGEL VALLEY, and to cause the BHIP downline agents and distributors to breach their contracts with Plaintiffs.

18B.	This Defendant is conducting business with Defendant, BHIP, in Collin County, Texas and has made significant contacts with Defendant, BHIP in Collin County, Texas. Plaintiffs request that service of process on this Defendant be by serving ANGEL VALLEY wherever the Defendant maybe found. ANGEL VALLEY has not registered to do business in the State of Texas with the Texas Secretary of State. ANGEL VALLEY has not provided a registered agent for ANGEL VALLEY that may be served in the State of Texas.

18C.	ANGEL VALLEY used Plaintiffs' trade secrets to promote, recruit, and solicit Plaintiffs' IBOs to join BHIP as part of ANGEL VALLEY's "team" in BHIP. ANGEL VALLEY has recruited and solicited Plaintiffs' IBOs to join BHIP and to breach their contract with Plaintiffs. ANGEL VALLEY has registered and sponsored Plaintiffs' IBOs in BHIP by using BHIP's services in Texas and BHIP's website located in Texas. ANGEL VALLEY has used BHIP

employees and agents in Texas to assist ANGEL VALLEY in recruiting and soliciting Plaintiffs' IBOs to breach their contracts with Plaintiffs. ANGEL VALLEY has used trade secrets misappropriated by Casey and Jeannie Combden to sponsor and register Plaintiffs' IBOs into BHIP through multiple contacts with BHIP agents in Texas and through the BHIP Texas website.

18D.     ANGEL VALLEY is a BHIP agent or distributor and has a contract with BHIP. ANGEL VALLEY negotiated its contract with BHIP, GARA and LACORE, a Texas resident, while BHIP and LACORE were in Texas. ANGEL VALLEY has a contract which is performable, in whole or in part, in the State of Texas.

18E.     ANGEL VALLEY is not a resident of the State of Texas. ANGEL VALLEY has personally availed itself of the privilege of conducting and transacting business in the State of Texas, and in Collin County, Texas. ANGEL VALLEY is authorized by BHIP to promote and sell BHIP business support materials and products.

18F.     ANGEL VALLEY has contracted by mail, web or otherwise with a Texas resident, BHIP, to perform services and a contract in whole or in part in the State of Texas.

18G.     ANGEL VALLEY's actions, as described herein, are a tort committed in whole or in part in the State of Texas.

18H.        ANGEL VALLEY has solicited and recruited directly, or through an intermediary, BHIP, located in the State of Texas, for BHIP agents and distributors in Texas, and has sponsored Plaintiffs' IBOs into BHIP through the BHIP corporate services offered in Texas.

18I.        ANGEL VALLEY has, and continues, to directly and intentionally market goods and services -- BHIP products and BHIP sponsorships -- in Texas.  ANGEL VALLEY has directly and intentionally sought a benefit, advantage or profit by availing itself of the benefits of its contract with BHIP in Texas.

18J.        ANGEL VALLEY earns profits in Texas from its BHIP contract and business relationship with BHIP, and utilizes the BHIP website to promote ANGEL VALLEY's business and to recruit others, to solicit others, to order BHIP products and services, to pay for BHIP products and services, and to advertise in Texas ANGEL VALLEY's BHIP products and services.  Through BHIP and its business operations in Texas, ANGEL VALLEY has used BHIP to market and sell BHIP products and services to BHIP agents/distributors in Texas and elsewhere.

18K.        BHIP provides in Texas ANGEL VALLEY with substantial business support for ANGEL VALLEY's BHIP business including, but not limited to, administrative support, customer support, product support, product training,

business support materials, business training activities, product information, financial, webinars and advertising, and business and distributor records and support.   BHIP provides in Texas the same support for ANGEL VALLEY's downline BHIP agents/distributors.  ANGEL VALLEY earns profits in Texas from the business support received from BHIP in Texas for its downline BHIP agents/distributors.  This civil action arises out of or is related to these activities of ANGEL VALLEY and BHIP occurring in Texas.

18L.      ANGEL VALLEY engages in business in the State of Texas, but does not maintain a regular place of business in Texas or a designated agent for service of process in Texas.  This proceeding arises out of the business done in Texas by ANGEL VALLEY and to which the nonresident is a party.  ANGEL VALLEY has, consequently, appointed the Texas Secretary of State as its agent for service of process.  TEX. CIV. PRAC. REM. CODE §17.044.  Plaintiffs request that summons be issued and served on the Texas Secretary of State for this Defendant.

**BUSINESS EMPOWERMENT**

19.    Defendant, BUSINESS EMPOWERMENT, is a Company organized under the laws of the State of Nevada.   The Manager for BUSINESS EMPOWERMENT is Lorrie Edelblute, whose address is 6440 Sky Point Dr. #140-101, Las Vegas, Nevada 89131.    The registered agent for BUSINESS

EMPOWERMENT is "Complete Corporate Solutions," whose address is 7065 W. Ann Rd. #130-679, Las Vegas, Nevada 89103.

19A.     Casey Combden, a former IBO of Plaintiffs, is a consultant for BUSINESS EMPOWERMENT and has enter into a "verbal" "consulting" agreement providing that he is to be paid a "variable percentage" of the "profits" of BUSINESS EMPOWERMENT.   He expects to receive a "majority" of the "profits" of BUSINESS EMPOWERMENT.  Casey Combden, while an IBO of Plaintiffs, misappropriated trade secrets of Plaintiffs and gave those trade secrets to BUSINESS EMPOWERMENT.  BUSINESS EMPOWERMENT used Plaintiffs' trade secrets to register and sponsor Plaintiffs' IBOs into the BHIP downline of BUSINESS EMPOWERMENT, and to cause the BHIP downline agents and distributors to breach their contracts with Plaintiffs.

19B.     This Defendant is conducting business with Defendant, BHIP, in Collin County, Texas and has made significant contacts with Defendant, BHIP in Collin County, Texas.   Plaintiffs request that service of process on this Defendant be by serving BUSINESS EMPOWERMENT wherever the Defendant maybe found.  BUSINESS EMPOWERMENT has not registered to do business in the State of Texas with the Texas Secretary of State.   BUSINESS EMPOWERMENT has not provided a registered agent for BUSINESS EMPOWERMENT that may be served in the State of Texas.

19C.        BUSINESS EMPOWERMENT used Plaintiffs' trade secrets to promote, recruit, and solicit Plaintiffs' IBOs to join BHIP as part of BUSINESS EMPOWERMENT's "team" in BHIP.    BUSINESS EMPOWERMENT has recruited and solicited Plaintiffs' IBOs to join BHIP and to breach their contract with Plaintiffs.    BUSINESS EMPOWERMENT has registered and sponsored Plaintiffs' IBOs in BHIP by using BHIP's services in Texas and BHIP's website located in Texas.  BUSINESS EMPOWERMENT has used BHIP employees and agents in Texas to assist BUSINESS EMPOWERMENT in recruiting and soliciting Plaintiffs' IBOs to breach their contracts with Plaintiffs.    BUSINESS EMPOWERMENT has used trade secrets misappropriated by Casey and Jeannie Combden to sponsor and register Plaintiffs' IBOs into BHIP through multiple contacts with BHIP agents in Texas and through the BHIP Texas website.

19D.        BUSINESS EMPOWERMENT is a BHIP agent or distributor and has a contract with BHIP.  BUSINESS EMPOWERMENT negotiated its contract with BHIP, GARA and LACORE, a Texas resident, while BHIP and LACORE were in Texas.  BUSINESS EMPOWERMENT has a contract which is performable, in whole or in part, in the State of Texas.

19E.        BUSINESS EMPOWERMENT is not a resident of the State of Texas.    BUSINESS EMPOWERMENT has personally availed itself of the privilege of conducting and transacting business in the State of Texas, and in

Collin County, Texas.  BUSINESS EMPOWERMENT is authorized by BHIP to promote and sell BHIP business support materials and products.

19F.    BUSINESS EMPOWERMENT has contracted by mail, web or otherwise with a Texas resident, BHIP, to perform services and a contract in whole or in part in the State of Texas.

19G.    BUSINESS EMPOWERMENT's actions, as described herein, are a tort committed in whole or in part in the State of Texas.

19H.    BUSINESS EMPOWERMENT has solicited and recruited directly, or through an intermediary, BHIP, located in the State of Texas, for BHIP agents and distributors in Texas, and has sponsored Plaintiffs' IBOs into BHIP through the BHIP corporate services offered in Texas.

19I.    BUSINESS EMPOWERMENT has, and continues, to directly and intentionally market goods and services -- BHIP products and BHIP sponsorships -- in Texas.  BUSINESS EMPOWERMENT has directly and intentionally sought a benefit, advantage or profit by availing itself of the benefits of its contract with BHIP in Texas.

19J.    BUSINESS EMPOWERMENT earns profits in Texas from its BHIP contract and business relationship with BHIP, and utilizes the BHIP website to promote BUSINESS EMPOWERMENT's business and to recruit others, to solicit others, to order BHIP products and services, to pay for BHIP products and

services, and to advertise in Texas BUSINESS EMPOWERMENT's BHIP products and services. Through BHIP and its business operations in Texas, BUSINESS EMPOWERMENT has used BHIP to market and sell BHIP products and services to BHIP agents/distributors in Texas and elsewhere.

19K.    In Texas, BHIP provides BUSINESS EMPOWERMENT with substantial business support for BUSINESS EMPOWERMENT's BHIP business including, but not limited to, administrative support, customer support, product support, product training, business support materials, business training activities, product information, financial, webinars and advertising, and business and distributor records and support. BHIP provides the same support for BUSINESS EMPOWERMENT's downline BHIP agents/distributors in Texas. BUSINESS EMPOWERMENT earns profits in Texas from the business support received from BHIP in Texas for its downline BHIP agents/distributors. This civil action arises out of or is related to these activities of BUSINESS EMPOWERMENT and BHIP occurring in Texas.

19L.    BUSINESS EMPOWERMENT engages in business in the State of Texas, but does not maintain a regular place of business in Texas or a designated agent for service of process in Texas. This proceeding arises out of the business done in Texas by BUSINESS EMPOWERMENT and to which the nonresident is a party. BUSINESS EMPOWERMENT has, consequently,

appointed the Texas Secretary of State as its agent for service of process. TEX. CIV. PRAC. REM. CODE §17.044. Plaintiffs request that summons be issued and served on the Texas Secretary of State for this Defendant.

**ALLEN VENTURE**

20.    Defendant, ALLEN VENTURE, is a Company organized under the laws of the State of Nevada. The Manager for ALLEN VENTURE is Lorrie Edelblute, whose address is 6440 Sky Point Dr. #140-101, Las Vegas, Nevada 89131. The registered agent for ALLEN VENTURE is "Complete Corporate Solutions," whose address is 7065 W. Ann Rd. #130-679, Las Vegas, Nevada 89103.

20A.      Casey Combden, a former IBO of Plaintiffs, is a consultant for ALLEN VENTURE and has enter into a "verbal" "consulting" agreement providing that he is to be paid a "variable percentage" of the "profits" of ALLEN VENTURE. He expects to receive a "majority" of the "profits" of ALLEN VENTURE. Casey Combden, while an IBO of Plaintiffs, misappropriated trade secrets of Plaintiffs and gave those trade secrets to ALLEN VENTURE. ALLEN VENTURE used Plaintiffs' trade secrets to register and sponsor Plaintiffs' IBOs into the BHIP downline of ALLEN VENTURE, and to cause the BHIP downline agents and distributors to breach their contracts with Plaintiffs.

20B.        This Defendant is conducting business with Defendant, BHIP, in Collin County, Texas and has made significant contacts with Defendant, BHIP in Collin County, Texas.   Plaintiffs request that service of process on this Defendant be by serving ALLEN VENTURE wherever the Defendant maybe found.  ALLEN VENTURE has not registered to do business in the State of Texas with the Texas Secretary of State.   ALLEN VENTURE has not provided a registered agent for ALLEN VENTURE that may be served in the State of Texas.

20C.        ALLEN VENTURE used Plaintiffs' trade secrets to promote, recruit, and solicit Plaintiffs' IBOs to join BHIP as part of ALLEN VENTURE's "team" in BHIP.  ALLEN VENTURE has recruited and solicited Plaintiffs' IBOs to join BHIP and to breach their contract with Plaintiffs.  ALLEN VENTURE has registered and sponsored Plaintiffs' IBOs in BHIP by using BHIP's services in Texas and BHIP's website located in Texas.  ALLEN VENTURE has used BHIP employees and agents in Texas to assist ALLEN VENTURE in recruiting and soliciting Plaintiffs' IBOs to breach their contracts with Plaintiffs.   ALLEN VENTURE has used trade secrets misappropriated by Casey and Jeannie Combden to sponsor and register Plaintiffs' IBOs into BHIP through multiple contacts with BHIP agents in Texas and through the BHIP Texas website.

20D.        ALLEN VENTURE is a BHIP agent or distributor and has a contract with BHIP.   ALLEN VENTURE negotiated its contract with BHIP,

GARA and LACORE, a Texas resident, while BHIP and LACORE were in Texas. ALLEN VENTURE has a contract which is performable, in whole or in part, in the State of Texas.

20E.        ALLEN VENTURE is not a resident of the State of Texas. ALLEN VENTURE has personally availed itself of the privilege of conducting and transacting business in the State of Texas, and in Collin County, Texas.  ALLEN VENTURE is authorized by BHIP to promote and sell BHIP business support materials and products.

20F.        ALLEN VENTURE has contracted by mail, web or otherwise with a Texas resident, BHIP, to perform services and a contract in whole or in part in the State of Texas.

20G.        ALLEN VENTURE's actions, as described herein, are a tort committed in whole or in part in the State of Texas.

20H.        ALLEN VENTURE has solicited and recruited directly, or through an intermediary, BHIP, located in the State of Texas, for BHIP agents and distributors in Texas, and has sponsored Plaintiffs' IBOs into BHIP through the BHIP corporate services offered in Texas.

20I.        ALLEN VENTURE has, and continues, to directly and intentionally market goods and services -- BHIP products and BHIP sponsorships -- in Texas.  ALLEN VENTURE has directly and intentionally sought a benefit,

advantage or profit by availing itself of the benefits of its contract with BHIP in Texas.

20J.        ALLEN VENTURE earns profits in Texas from its BHIP contract and business relationship with BHIP, and utilizes the BHIP website to promote ALLEN VENTURE's business and to recruit others, to solicit others, to order BHIP products and services, to pay for BHIP products and services, and to advertise in Texas ALLEN VENTURE's BHIP products and services.  Through BHIP and its business operations in Texas, ALLEN VENTURE has used BHIP to market and sell BHIP products and services to BHIP agents/distributors in Texas and elsewhere.

20K.        In Texas, BHIP provides ALLEN VENTURE with substantial business support for ALLEN VENTURE's BHIP business including, but not limited to, administrative support, customer support, product support, product training, business support materials, business training activities, product information, financial, webinars and advertising, and business and distributor records and support.  BHIP provides the same support for ALLEN VENTURE's downline BHIP agents/distributors in Texas.  ALLEN VENTURE earns profits in Texas from the business support received from BHIP in Texas for its downline BHIP agents/distributors.  This civil action arises out of or is related to these activities of ALLEN VENTURE and BHIP occurring in Texas.

20L.        ALLEN VENTURE engages in business in the State of Texas, but does not maintain a regular place of business in Texas or a designated agent for service of process in Texas.  This proceeding arises out of the business done in Texas by ALLEN VENTURE and to which the nonresident is a party.  ALLEN VENTURE has, consequently, appointed the Texas Secretary of State as its agent for service of process.  TEX. CIV. PRAC. REM. CODE §17.044.  Plaintiffs request that summons be issued and served on the Texas Secretary of State for this Defendant.

**NEVADA WEALTH**

21.    Defendant, NEVADA WEALTH, is a Company organized under the laws of the State of Nevada.  The Manager for NEVADA WEALTH is Lorrie Edelblute, whose address is 6440 Sky Point Dr. #140-101, Las Vegas, Nevada 89131.  The registered agent for NEVADA WEALTH is "Complete Corporate Solutions," whose address is 7065 W. Ann Rd. #130-679, Las Vegas, Nevada 89103.

21A.        Casey Combden, a former IBO of Plaintiffs, is a consultant for NEVADA WEALTH and has enter into a "verbal" "consulting" agreement providing that he is to be paid a "variable percentage" of the "profits" of NEVADA WEALTH.  He expects to receive a "majority" of the "profits" of NEVADA WEALTH.  Casey Combden, while an IBO of Plaintiffs,

36

misappropriated trade secrets of Plaintiffs and gave those trade secrets to NEVADA WEALTH. NEVADA WEALTH used Plaintiffs' trade secrets to register and sponsor Plaintiffs' IBOs into the BHIP downline of NEVADA WEALTH, and to cause the BHIP downline agents and distributors to breach their contracts with Plaintiffs.

21B.    This Defendant is conducting business with Defendant, BHIP, in Collin County, Texas and has made significant contacts with Defendant, BHIP in Collin County, Texas. Plaintiffs request that service of process on this Defendant be by serving NEVADA WEALTH wherever the Defendant maybe found. NEVADA WEALTH has not registered to do business in the State of Texas with the Texas Secretary of State. NEVADA WEALTH has not provided a registered agent for NEVADA WEALTH that may be served in the State of Texas.

21C.    NEVADA WEALTH used Plaintiffs' trade secrets to promote, recruit, and solicit Plaintiffs' IBOs to join BHIP as part of NEVADA WEALTH's "team" in BHIP. NEVADA WEALTH has recruited and solicited Plaintiffs' IBOs to join BHIP and to breach their contract with Plaintiffs. NEVADA WEALTH has registered and sponsored Plaintiffs' IBOs in BHIP by using BHIP's services in Texas and BHIP's website located in Texas. NEVADA WEALTH has used BHIP employees and agents in Texas to assist NEVADA WEALTH in recruiting and soliciting Plaintiffs' IBOs to breach their contracts with Plaintiffs. NEVADA

WEALTH has used trade secrets misappropriated by Casey and Jeannie Combden to sponsor and register Plaintiffs' IBOs into BHIP through multiple contacts with BHIP agents in Texas and through the BHIP Texas website.

21D.       NEVADA WEALTH is a BHIP agent or distributor and has a contract with BHIP.  NEVADA WEALTH negotiated its contract with BHIP, GARA and LACORE, a Texas resident, while BHIP and LACORE were in Texas. NEVADA WEALTH has a contract which is performable, in whole or in part, in the State of Texas.

21E.       NEVADA WEALTH is not a resident of the State of Texas. NEVADA WEALTH has personally availed itself of the privilege of conducting and transacting business in the State of Texas, and in Collin County, Texas. NEVADA WEALTH is authorized by BHIP to promote and sell BHIP business support materials and products.

21F.       NEVADA WEALTH has contracted by mail, web or otherwise with a Texas resident, BHIP, to perform services and a contract in whole or in part in the State of Texas.

21G.       NEVADA WEALTH's actions, as described herein, are a tort committed in whole or in part in the State of Texas.

21H.       NEVADA WEALTH has solicited and recruited directly, or through an intermediary, BHIP, located in the State of Texas, for BHIP agents and

distributors in Texas, and has sponsored Plaintiffs' IBOs into BHIP through the BHIP corporate services offered in Texas.

21I.    NEVADA WEALTH has, and continues, to directly and intentionally market goods and services -- BHIP products and BHIP sponsorships -- in Texas.  NEVADA WEALTH has directly and intentionally sought a benefit, advantage or profit by availing itself of the benefits of its contract with BHIP in Texas.

21J.    NEVADA WEALTH earns profits in Texas from its BHIP contract and business relationship with BHIP, and utilizes the BHIP website to promote NEVADA WEALTH's business and to recruit others, to solicit others, to order BHIP products and services, to pay for BHIP products and services, and to advertise in Texas NEVADA WEALTH's BHIP products and services.  Through BHIP and its business operations in Texas, NEVADA WEALTH has used BHIP to market and sell BHIP products and services to BHIP agents/distributors in Texas and elsewhere.

21K.    In Texas, BHIP provides NEVADA WEALTH with substantial business support for NEVADA WEALTH's BHIP business including, but not limited to, administrative support, customer support, product support, product training, business support materials, business training activities, product information, financial, webinars and advertising, and business and distributor

records and support.  BHIP provides the same support for NEVADA WEALTH's downline BHIP agents/distributors in Texas.  NEVADA WEALTH earns profits in Texas from the business support received from BHIP in Texas for its downline BHIP agents/distributors.  This civil action arises out of or is related to these activities of NEVADA WEALTH and BHIP occurring in Texas.

21L.    NEVADA WEALTH engages in business in the State of Texas, but does not maintain a regular place of business in Texas or a designated agent for service of process in Texas.  This proceeding arises out of the business done in Texas by NEVADA WEALTH and to which the nonresident is a party.  NEVADA WEALTH has, consequently, appointed the Texas Secretary of State as its agent for service of process.  TEX. CIV. PRAC. REM. CODE §17.044.  Plaintiffs request that summons be issued and served on the Texas Secretary of State for this Defendant.

## III.

## JURISDICTION AND VENUE

22.    Jurisdiction is based upon 28 U.S.C. §§1331, 1332 and 1367.  This action involves claims arising under the Constitution, laws or treaties of the United States.  This action is a matter in controversy between citizens of different states.  The matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs and is between citizens of different States.

23.    This Court has supplemental jurisdiction over Plaintiffs' claims under Texas law under 28 U.S.C. §1367.

24.    Venue is proper in this district and division under 28 U.S.C. § 1391 based on Defendants regularly transacting business within this district and division.

24A.    LACORE resides and is a resident of this district and division, and BHIP resides and is a resident within this district and division.

24B.    BHIP's principal office and principal place of business is in Collin County, Texas, a location that is within this district and division.

24C.    Defendants do business together and by and between each other within this district and division and have entered into contracts by and between each other that are enforceable and performable within this district and division.

24D.    A substantial part of the events or omissions giving rise to the claims occurred within this district and division.

24E.    This district and division is a judicial district in which Defendants, LACORE and BHIP are subject to personal jurisdiction.

24F.    All Defendants are subject to personal jurisdiction within this district and division.

24G.    Defendants, LACORE and BHIP, may be found within this district and division.  The corporate Defendants are deemed to reside in this district

and division and had personal jurisdiction in this district and division at the time that this action was commenced.

24H.    Upon information and belief, Defendant, GARA, is an alien. GARA regularly transacts business with BHIP in this district and division.

24I.    All Defendants have entered into agreements and contracts with each other which are performable within this district and division.

24J.    Defendants regularly transact business within this district and division, regularly solicit business in this district and division, regularly recruit potential business associates in this district and division, operate interactive websites that are accessible and accessed by individuals residing within this district and division.

24K.    Defendants have engaged, and continue to engage, in the transaction of business and the commission of the acts complained of herein and in interstate commerce, and Defendants are within the jurisdiction and venue of this Court.

25.    This Court is a court of law and equity.

## IV.

## STATEMENT OF FACTS

## A.    The Amway Business and Amway's Contracts with its IBOs

26.    Since 1959, AMWAY CORP. has sold a variety of consumer products through a multilevel marketing plan.  Amway's most popular products include energy drinks, nutritional supplements, home care products, personal care and beauty products.  These products are widely recognized for their high quality, and are sold through Amway's web site.  The volume of product sales is significant, making Amway one of the largest online retailers among e-commerce sites in North America.  Amway attributes its success to, among other things, its outstanding product lines and its unique network of IBOs.  Amway also operates its business and this business model in Canada.  Canada is considered one of the North American markets.

27.    To become an Amway IBO, one submits an application to Amway. When Amway accepts the application, a contract is formed between Amway and the new IBO.  The contract places obligations on both parties, including a requirement that IBOs comply with Amway's "Rules of Conduct."

28.    IBOs are independent contractors, whose individual success depends in part on their own selling efforts and the selling efforts of the persons they sponsor and support.  The sponsoring IBO is referred to as an "upline" and the sponsored IBO is referred to as a "downline."

29.    An IBO can earn money by purchasing products from Amway at IBO cost and reselling them to customers at higher retail prices that are determined by

the IBO.  An IBO also may earn commissions, called "bonuses" under the Amway multilevel marketing plan, based on the IBO's sales and the sales of downline IBOs.  Typically, IBOs also purchase Amway products for their own personal use.

30.    IBOs consume the products and services themselves, sell the products and services to retail customers, and introduce, or recruit, or sponsor other IBOs to consume and sell the products and services.  The recruitment of other IBOs creates a multilevel marketing network of business owners.  The lineage or linkage between all IBOs in a specific organization within Plaintiffs' network of IBOs is referred to as the "Line of Sponsorship" ("LOS").  The LOS would not exist but for the Plaintiffs' business opportunity.  The LOS for all IBOs in Canada and North America works together.

31.    AMWAY CANADA has been operating a multi-level marketing plan in Canada since October 9, 1962.  From July 16, 1999 to December 28, 2000, however, Amway Canada was known as "Quixtar Canada, Inc."  AMWAY CORP. is the name of the corporate entity in the United States that has been operating in a multi-level marketing plan since 1959, except from September 1, 1999 to September 1, 2008, however, Amway was known as "Quixtar, Inc."

32.    To control and properly administer the multilevel marketing plan, Plaintiffs have adopted Rules of Conduct.

33.    In addition to selling products and services to consumers, an IBO may sponsor other IBOs by introducing them to the Independent Business Ownership Compensation Plan and providing them with information about the Plaintiffs' business.  Plaintiffs help recruit new IBOs into the business through advertising, promotional literature, product development, product support and IBO support.

34.    To become an IBO, an individual must submit a written or online Registration Form to AMWAY CANADA or AMWAY CORP.  The new IBO lists his or her sponsor during registration, but does not necessarily provide the registration form to his or her sponsor.  The sponsoring IBO does not necessarily possess the new IBO contact information independent of their association with Plaintiffs or before Plaintiffs receive and input that information into the databases.

35.    By executing the Registration Form, each IBO forms a contract with Amway and agrees to comply with the Amway Rules of Conduct as they may be amended and published from time to time in official literature.  The contract provides IBOs with substantial benefits including the right to obtain Amway products at IBO cost for their own use or for resale, the right to recruit others to sell Amway products, and the right to qualify for bonuses based on their own sales and the sales of other IBOs downline of them in Amway.  While IBOs may sponsor other IBOs into the Amway business, each IBO enters into a direct contractual relationship with Amway.  IBOs cannot build an Amway business until

they sign a contract with Amway.  Amway compensates IBOs for their sales efforts in the form of sales bonuses, access to Amway products, and other benefits.

36.    Amway's Rules of Conduct are incorporated in every IBO's contract with Amway and apply to all IBOs.  The Rules describe in detail the rights, duties and responsibilities of each IBO.  Each year, an IBO has the opportunity to renew his or her independent business.  If renewing, the IBO must pay a renewal fee and renew the commitment to abide by the Amway Rules of Conduct then in force.

37.    All Amway IBOs who wish to remain active must renew their businesses annually.  IBOs may renew by signing an annual renewal form, or Intent to Continue Form.  They may also renew automatically by authorizing Amway to charge their credit card or Amway account.  At each renewal, all Amway IBOs agree to abide by the IBO Rules of Conduct then in force.

38.    All IBOs are bound by the Privacy and Confidentiality policies in Rule 4.27 of the Rules of Conduct.

39.    Rule 4.27 provides that all LOS information constitutes a commercially advantageous, unique and proprietary trade secret of Amway (Proprietary Information), which it keeps proprietary and confidential and treats as a trade secret.  Rule 4.27 also provides that Amway is the exclusive owner of all Proprietary Information, which is derived, compiled, configured and maintained through the expenditure of considerable time, effort and resources by Amway and

46

its IBOs, and that all IBOs, among other things, shall not disclose Proprietary Information to any third party or use Proprietary Information to compete either directly or indirectly with Amway.  Rule 4.27 states that any use or disclosure of Proprietary Information will cause significant and irreparable harm to the company, warranting the award of temporary, preliminary and permanent injunctive relief.

40.     Other Rules of Conduct also protect the LOS.  For example, Rule 4.14 prohibits IBOs from "tak[ing] advantage of their knowledge of or association with other IBOs whom they did not personally register, including their knowledge resulting from or relating to their individual lines of sponsorship," in order to promote and expand other business ventures, including other selling activities involving products, services, or business opportunities not offered or marketed by Amway.

41.     Rule 6.5 restricts an IBO's ability to misappropriate the LOS by prohibiting IBOs from soliciting, encouraging, or persuading others to compete against Amway and other IBOs for 6 months after leaving Amway.  Rule of Conduct 6.5.5 states that "Every IBO agrees not to encourage, solicit, or otherwise attempt to persuade any other IBO to Compete with the business of the corporation."  Rule of Conduct 6.5.4 states that "Every IBO agrees not to Compete, either directly or indirectly, with the business of the Corporation… during the six-

month period following (a) the voluntary or involuntary resignation, non-renewal, or termination of that IBO's independent business, or (b) any violation by the IBO of this Subsection 6.5.4, whichever is later." Under Rule 6.5.1, "Compete" is defined as "to own, manage, operate, consult for, be employed by, or participate as an independent distributor in (a) any other direct sales program using a multilevel or "network" marketing structure, or (b) any other enterprise that markets, through independent distributors, products or services functionally interchangeable with those offered or marketed by the Corporation." Rule 6.5.5 complements Rule 4.27 by protecting Amway and its IBOs from harm to the business structure and the loss of revenue that is likely to result from misappropriation of the LOS through solicitation of IBOs to join competitive business ventures. This Rule prevents unscrupulous IBOs and others from raiding Amway's significant investments in both its trade secrets and goodwill. It also protects the efforts of other IBOs in building an Amway sales group.

42.    Amway invests substantial money and effort into making its business opportunity attractive, to make it easier for IBOs to successfully recruit others to become IBOs. This investment in goodwill includes unique, high-quality products, created with Amway's own extensive research, development, manufacturing and quality assurance departments; product distribution centers; creation and dissemination of training materials; a large, experienced customer relations and

support department; a fair and transparent compensation plan; Rules of Conduct that are designed to help and protect each IBO; and a knowledgeable Business Conduct and Rules Department to enforce Amway's Rules of Conduct. Each year Amway invests many millions of dollars to create, maintain and enhance its extensive goodwill, which is leveraged by IBOs. Amway rewards its IBOs for developing downline distributors who make sales.

43.    Amway makes additional, substantial business investments in programs and processes that support the Amway business opportunity and enhance the IBOs' productivity and success, the cost of which would otherwise be borne by the small entrepreneur. Among these are (a) investments in programs to improve product selling skills of IBOs; (b) investments in R&D for own-label product lines; (c) hundreds of U.S. and foreign patents and trademarks to protect intellectual property; (d) maintenance of significant headquarters including personnel, warehouses, production facilities, marketing research, and customer support facilities; and, (e) consistent bonus/incentive payouts over time. Amway invests in computer hardware, software, and infrastructure, and numerous employees in various departments, such as Information Technology, Business Rules and Conduct, and Sales, which have responsibility for various aspects of developing, maintaining, and protecting the LOS. These substantial costs are borne by Amway, which spares IBOs the significant expense and effort of building complex

databases, purchasing computer hardware and software, and engaging in complicated programming to track the structure of, performance of, and changes to downline IBOs. IBOs rely on Amway to perform these functions.

44.    There is a massive amount of data that Amway adds, manages, and maintains through its extensive—and costly—data management center. Amway's data management center tracks all sales and sponsoring activities of IBOs, administers the bonus system for IBOs, and provides the resources for IBOs to manage their business activities and monitor the business activities of those downline of them in the Amway LOS. Creating and maintaining such data costs Amway a significant amount of time, manpower, and monetary resources.

45.    The LOS is one of Amway's most valuable assets. It lists Amway's customers and includes the architecture and structure of the organization of Amway's independent sales force, its sales commission structure, and its key customers. It is a structured compilation of specific business information for hundreds of thousands of IBOs, including:

- The organizational structure and economic relationship between and among IBOs (including their sponsoring activity);

- The sales volume, by month, of each IBO;

- The commission brackets each IBO currently occupies;

- Each IBO's current award/qualification level (e.g. Platinum, Ruby, etc.); and,

50

- Contact information about each IBO.

For example, the LOS includes, on average, 100 or more IBOs downline of a Platinum IBO, and typically hundreds (if not thousands) of IBOs downline of a qualifying Diamond IBO.

46.    Amway products are marketed through the LOS.  The LOS network and its specific architecture of economic relationships set Amway apart from less successful multilevel marketing business ventures and provide a substantial competitive advantage to Amway.    Amway has spent more than 50 years developing its unique and confidential distribution network.  The goodwill and relationships Amway has with its IBOs, and with all the consumers who purchase Amway products and services through these IBOs, are all based on and organized around the LOS and are extremely valuable to Amway.

47.    The LOS is the primary market channel through which Amway sells its products.  The LOS includes a customer list because most IBOs purchase Amway products for personal use.  But the LOS is more than just a customer list. An IBO's assigned position in the LOS creates economic relationships with upline and downline IBOs that can be very valuable.  When Amway accepts a person's application to become an IBO, Amway places that person within the LOS structure, which creates the organizational structure of economic relationships among upline and downline IBOs.  The new IBO starts at the bottom of one leg in

51

the line of sponsorship. The LOS provides a map of Amway's IBO distribution network, showing the relationships among IBOs that determine which IBO receives bonus payments for which product sales. It identifies who sponsored whom in the LOS, which IBOs are key leaders in the LOS, which have demonstrated success at selling products and sponsoring others to become IBOs, and which are most likely to influence, train and motivate the largest number of other IBOs.

48.   Amway's LOS is the backbone of its compensation plan. It provides Amway and the IBOs with the information they need to build and maintain the Amway business and affects an IBO's earning potential in the Amway business. LOS information, including the organizational structure and economic relationships between and among IBOs (including their sponsoring activities) and each IBO's award/qualification level that form the basis for compensation to IBOs.

49.   For instance, the portion of Amway's LOS corresponding to IBOs Casey and Jeannie Combden, by itself, constitutes hundreds of IBO records with each IBO connected to one another in a specific organizational structure critical to functioning in a multi-level marketing organization.

50.   Amway's LOS information is not publicly available and is not routinely provided to IBOs. Amway has always maintained its LOS as confidential trade secret information. Amway takes substantial measures to protect

the confidentiality of this proprietary and competitively valuable information. These include:

- Requiring a password to access Amway's LOS;

- Making Amway's LOS available to IBOs in a limited form only, including limiting the amount of confidential information accessible to any given IBO, depending on the IBO's pin level. Amway's entire distribution network architecture is not available to any single IBO. Initially, IBOs have access to only their own business information and the business information of those they personally sponsored since they are obligated to train and mentor those IBOs. IBOs who reach the Platinum level of achievement are able to see the business information of those IBOs they have sponsored into the Amway business as well as IBOs further downline in the Amway LOS down to the next Platinum level IBO. This increased access to LOS information and structure corresponds to the Platinum IBO's increased contractual obligations for training and mentoring downline IBOs. While IBO-owned training organizations can obtain permission to use portions of Amway's LOS for supporting the Amway business, Amway retains control over use of the Amway LOS. Like IBOs, IBO-owned training organizations are subject to the same restrictions regarding use, confidentiality, and return of LOS information once they are no longer affiliated with Amway.

- Only employees who need to see the information, or a portion of the information, as part of their job responsibilities, have access to the LOS.

- Making portions of Amway's LOS available for a limited purpose only – to facilitate an IBO's business;

- Prohibiting compiling, organizing, accessing, creating lists from or otherwise using Amway's LOS except as authorized by Amway;

- Revoking an IBO's limited right to use Amway's LOS upon termination, non-renewal or resignation from the Amway business;

- Prohibiting an IBO from accessing Amway's LOS upon termination, non-renewal or resignation from the Amway business;

- Protecting Amway's LOS through contract with its IBOs, including but not limited to in Rule of Conduct 4.27; this rule expressly provides that all LOS information is considered and maintained as proprietary information of Amway, and that all IBOs, among other things, shall not disclose it to any third party or use it to compete either directly or indirectly with Amway.

- Protecting Amway's LOS through Rule 4.14, which prohibits IBOs from "tak[ing] advantage of their knowledge of or association with other IBOs whom they did not personally register, including their knowledge resulting from or relating to their individual lines of sponsorship," in order to promote and expand other business ventures, including other selling activities involving products, services, or business opportunities not offered or marketed by Amway.

- Protecting Amway's LOS through the adoption (at the recommendation of the IBOAI Board—an independent IBO trade organization) of Rule 6.5, which restricts an IBO's ability to misappropriate the LOS by prohibiting IBOs from soliciting, encouraging, or persuading others to compete against Amway and other IBOs for a period of time after leaving Amway.  Rule 6.5.5 complements Rule 4.27.1 by protecting Amway and its IBOs from harm to the business structure and the loss of revenue that is likely to result from misappropriation of the LOS through solicitation of IBOs to join competitive ventures.

- Providing training and reminders to IBOs regarding the importance of LOS protection;

- Requiring that IBOs agree to a Confidentiality Agreement before accessing proprietary LOS data on the Amway website;

- Employing a policy, granting a limited non-exclusive license to proprietary LOS information solely for the Amway business, and prohibiting disclosure of same to third parties; and,

- Configuring the LOS database to print a confidentiality designation on any LOS printout.

51.    Amway IBOs have been provided with only limited access, to a portion of the Amway LOS that was related to supporting the Amway business.  No IBO receives access to the entirety of the LOS.  Amway's policy limits IBOs' access to not only portions of the LOS downline from them, but also to any other portions of Amway's outside of the LOS downline from them.  To the extent an

IBO has LOS information in his/her possession to support the Amway business, it remains subject to all confidentiality obligations applicable to the IBO.

52.    Because of the specific and detailed nature of the data that Amway has compiled, developed, and protected over many years, it would be practically impossible for a competitor to reconstruct or duplicate the confidential information about Amway's distributor network without access to that confidential information, and an IBO could not recreate the LOS information without relying on information gleaned through his or her contractual relationship with Amway. Amway's LOS structural relationships cannot be obtained from a review of magazines, recognition announced at various IBO events, or personal lists of friends and family. Nor can the LOS be created through phone lists or personal contacts such as friends and family. No public source identifies the structural relationships between IBOs in the business, how the IBOs are growing their business, the earnings potential created by the structural relationship, or the overwhelming majority of Amway's IBOs.

53.    Because access to Amway's LOS provides a competitor with a ready-made distributor force, Amway's LOS would be very valuable to competitors and IBOs depend on Amway to preserve and protect the LOS from raiding by former IBOs and business ventures that compete with Amway. Amway's Rules of Conduct help protect Amway's LOS for its own benefit and the benefit of all IBOs.

The impact of the loss of significant numbers of IBOs is not limited to those IBOs alone, but leads to recruiting losses for many years to come.

54.    The Amway Rules of Conduct also provide that they are applicable to both a husband and wife even if one or the other did not sign the IBO agreement, or one or the other joined the marriage after the spouse started an Amway Independent Business ("IB").  Rule 3.2.1 provides as follows: "A husband and wife are deemed to operate their IBs as a single entity regardless of whether both names are on the business. Therefore, each is held accountable for the actions of the other so far as the Rules of Conduct are concerned."

**B.    The actions and conduct of BHIP, LACORE AND GARA**

55.    BHIP is a newcomer to the multilevel marketing business.  BHIP was incorporated in accordance with the laws of the State of Texas in September of 2007.  BHIP utilizes a multilevel marketing plan to distribute and sell its products. The multilevel marketing plan of BHIP incorporates some of the same features and characteristics as the Plaintiffs' multilevel marketing plan.  The BHIP multilevel marketing plan, like Plaintiffs,' has a line of sponsorship, or is organized such that there are upline and downline distributors who personally consume and sell BHIP's products to retail customers.  BHIP's marketing plan also incorporates the feature of sponsoring, or recruiting others to become part of the BHIP multilevel marketing line of sponsorship, or genealogy.  Recruiting others to join BHIP is a

significant part of BHIP's development of BHIP's business model.  The BHIP multilevel marketing network is responsible for the sales of BHIP products.

56.    BHIP offers three (3) products.  The BHIP products compete with products sold by Plaintiffs.  The products being sold and marketed by BHIP are a "bHIP energy blend," which is advertised as the "world's first all natural energy drink."  A BHIP Nona Gia which is advertised as the "world's first organic Noni powder," a so-called "superfood" that it is purportedly "absolutely jampacked with antioxidants."  And a third product – bHIP Pleasur – a female health supplement which supposedly "enhances a woman's sexual responsiveness" and referred to as a "female Viagra."  Plaintiffs also sell and distribute energy drinks and other products that contain antioxidants.   The BHIP products are functionally interchangeable with products sold by Plaintiffs and their IBOs.

57.    Defendant, TERRY LACORE, is a "founder" of BHIP, its registered agent, a director of BHIP, and its "CEO."  He controls and directs the unlawful and improper conduct of BHIP and others associated in acting in concert with LACORE.

58.    Defendant, GARA, is part of the "corporate team" at BHIP, a "Co-founder" and the "Master Distributor" for BHIP.  GARA has a contract with BHIP that is performable in Collin County, Texas. GARA is an alien.  He is not a

resident of the State of Texas.  He is elusive.  His whereabouts are hard to determine.

59.    GARA traveled to Texas to meet with LACORE about BHIP and GARA's contract and business relationship with BHIP.

60.    GARA depends on the services of BHIP agents and employees in Texas to support his BHIP business.

61.    GARA owns TEAM IN MOTION.  He uses TEAM IN MOTION to solicit and recruit BHIP agents and distributors.  BHIP supports TEAM IN MOTION by using BHIP employees and agents working in Texas.

62.    GARA used TEAM IN MOTION to solicit and recruit Casey and Jeannie Combden to join BHIP, and to solicit and recruit other IBOs of Plaintiffs to breach their contract with Plaintiffs and to misappropriate Plaintiffs' trade secrets.

63.    Defendants have raided the trade secret LOS of Plaintiffs, and unlawfully and wrongfully interfered with Plaintiffs' contracts with its IBOs.

64.    Defendants have solicited and recruited IBOs to breach their IBO contracts with Plaintiffs and to join BHIP in competition with Plaintiffs.

65.    Defendants' actions were committed knowingly, and continue to be committed knowingly at this time.

66.    Defendants know that Plaintiffs' IBOs have a contract that prohibits them from competing with Plaintiffs, and soliciting others to compete against Plaintiffs.

67.    Defendants know that Plaintiffs' IBOs have a contract that prohibits disclosure by IBOs of LOS trade secrets and other confidential information that Plaintiffs provide to its IBOs to build the Amway business.

68.    BHIP has its own contract with its agents and distributors that prohibits competition and prohibits disclosure of trade secrets and proprietary and confidential information of BHIP.

70.    BHIP considers its LOS and enrollment information of its agents and distributors a trade secret, and proprietary and confidential, and prohibits the disclosure of that information by its agents and distributors.

71.    Defendants have a reckless disregard for the contract between Plaintiffs and their IBOs.

72.    BHIP, LACORE, GARA and TEAM IN MOTION have solicited and recruited Casey and Jeannie Combden, IBOs under contract with Plaintiffs, to breach their contractual obligations to Plaintiffs by, *inter alia*, signing contracts with BHIP and becoming BHIP distributors, and have solicited them to misappropriate Plaintiffs' trade secrets for the benefit of BHIP, LACORE, GARA and TEAM IN MOTION.

73.    BHIP, LACORE, GARA and TEAM IN MOTION have encouraged Casey and Jeannie Combden to solicit and recruit other IBOs under contract with Plaintiffs to breach their contract with Plaintiffs by becoming BHIP distributors, and, in turn, recruiting other IBOs under contract with Plaintiffs to become BHIP distributors.

74.    BHIP, LACORE, GARA and TEAM IN MOTION have encouraged Casey and Jeannie Combden to solicit and recruit other IBOs under contract with Plaintiffs to breach their contract with Plaintiffs by misappropriating and disclosing Plaintiffs' trade secrets, and, in turn, recruiting other IBOs under contract with Plaintiffs' to misappropriate and disclose Plaintiffs' trade secrets.

**C.    The actions and conduct of Casey and Jeannie Combden.**

75.    Casey and Jeannie Combden are former IBOs under contract with Plaintiffs, and, as IBOs, had access to Plaintiffs' trade secrets, LOS, and confidential information -- subject to the restrictions contained in the Rules of Conduct.

76.    Casey and Jeannie Combden are married, and under the Rules of Conduct, both are subject to the Plaintiffs' contract and the Rules of Conduct including the Rules prohibiting the disclosure of confidential information and trade secrets.

77.    In late July 2010, GARA, with the assistance and knowledge of LACORE and BHIP, recruited Casey and Jeannie Combden to breach their contract with Plaintiffs and to join BHIP as independent agents/distributors.

78.    To induce Casey and Jeannie Combden to misappropriate Plaintiffs' trade secrets and to join BHIP as independent agents/distributors, GARA negotiated a contract for Casey and Jeannie Combden with BHIP that would, *inter alia,* pay Casey and Jeannie Combden $10,000.00 per week in addition to and over and above the normal BHIP commissions earned as a BHIP independent agent/distributor.  The contract also had other inducements.

79.    On July 21, 2010, Casey Combden sent an e-mail to GARA stating: "Jeannie and I had an excellent time with you and Milli.  . . . . Thank you for the contract.  My first glance at it seems favorable.  Tomorrow I will take the time to learn the compensation plan and better understand the power of the volume.  I would like to meet again, perhaps Thursday and talk live in a casual setting and start preparing myself for the new adventure with you."

80.    GARA forwarded Casey Combden's July 21, 2010 e-mail to LACORE.  LACORE responded by saying: "WOW!!!  I will leave it simple and sweet, GREAT JOB."

81.    GARA continued his recruiting efforts directed at Casey and Jeannie Combden after July 21, 2010 and had subsequent meetings with Casey and Jeannie Combden.

82.    On July 23, 2010, Joe Wood, a BHIP employee sent an e-mail to Robert at BHIP stating:

"We just brought on another big leader in Canada and need to send some product samples to him.  Please send the following:

        10 bHIP Energy
        10 Noni Gia
        10 Pleasur boxes (pillow packs)
        1 banner each Energy, Noni, Pleasur, bHIP GLOBAl, LaCore

If you want you can send the banners in a separate package. . . . The address is as follows:

        Casey Combden
        914 Ivsbridge Blvd
        Newmarket, Ontario
        L3X1L6
        Phone: [redacted]
        Email:     casey@caseycombden.com"
        . . . .

83.    On July 26, 2010, GARA sent an e-mail to Sherry LaCore, an employee at BHIP, stating:

"I need your help activating the following positions with their GSS and [sic] few of them marked in red to become a 1* GL status.  I'll be over [sic] their house tonight again to position [sic] few more of their key players.

This couple are the #1 distributors in Amway Canada and they're NOW on board with bHIP.  We're working on structuring their generals in bHIP before [sic] masses come into the system.

Thank you

Kosta Gara

- Management business services (48388)
- Jeannie Combden (48390)
- [redacted]
- CEI (48398) "

84.    GARA's July 26, 2010 e-mail was forwarded to LACORE.  He responded: "Approved!"

85.    On July 27, 2010, GARA sent an e-mail to Sherry Lacore, Joe Wood, and Terry LaCore (LACORE) at BHIP Re: Casey Combden.  He said:

"Would you please add the cash option for Casey Combden's [sic] to position all his diamond leaders over the next 24-48 hours.  He's the #1 guy in Canada for Amway that I recruited last week and he'll be a major player in the company.

I just can't sit there next to him for 10 hours to enter all this into the system using my corporate access account. This way, once he's done then I'll let you know which ones need to be upgraded to what ranking.

I need this to happen as soon as possible please as we're investing quiet a bit of money and time.

Management Business Services (48388)"

86.    Also on July 28, 2010, GARA wrote another e-mail to Michelle Moles at BHIP, and copied Sherry LaCore, Terry LaCore (LACORE), and Jennifer Kibbee, all agents and employees of BHIP. GARA said:

"Since Terry's resting, I wanted to step up and confirm that we're paying Casey Combden starting this friday [sic] July 30[th] 10K a week for the next 20 weeks.

Here is his position that is linked to his Paypal:

Management Business Services (ID# 48388)

Thank you

Kosta Gara"

87.    Michelle Moles forwarded the July 28, 2010 e-mail to LACORE and said:

"Hi Terry,

Could you please confirm whether this BDA request is approved for Casey Combden's account, Management Business Services (48388)?

Could you also please confirm if the amount of **$10,000 per week** for the next 20 weeks is correct?

Thanks,

Michelle"

(emphasis in the original).

88.    LACORE confirmed and approved the payment of $10,000.00 per week for 20 weeks to be paid to Casey Combden.

89.    On August 1, 2010, Casey and Jeannie Combden announced via an internet posting made by Jeannie Combden that the Combdens were pursuing a new business opportunity -- the BHIP business.  The Combdens' message said: that Jeannie has "chosen to leave the Amway business, to pursue the chance of a lifetime" and that she was "so happy and grateful to the thousands of friends that I've met through my association with InterBIZ and the Amway company."  The message also referenced Jeannie's "experience and high profile as the wife of Casey Combden" and that "[i]t is my pleasure to accept the position and commit to the two corporate owners to drive this company to the top."  The message solicited IBOs under contract with Plaintiffs to come to the "live presentation" at the

"Paradise Banquet Hall" and to "contact" Jeannie "if you are interested to become part of history with us . . . it's a new day and a new time and I have found the Dream Business." The message closed by offering to "hold a spot for you at the top of this venture." She clearly implied to IBOs that their economic relationships in the Amway LOS would be duplicated in BHIP's network structure. The August 1, 2010 message from Jeannie Combden is linked at the Casey Combden website at http://caseycombden.com/jeannies-opportunity/.

90.    During the first week of August 2010, Casey and Jeannie Combden began to actively and publicly promote and recruit IBOs under contract with Plaintiffs to attend BHIP "webinars" and the live presentations of the BHIP business opportunity. Since August 1, 2010, Casey and Jeannie Combden have participated in multiple "live presentations" of the BHIP business and BHIP training at the "Paradise Banquet Hall" and have solicited multiple IBOs under contract with Plaintiffs to "join" Casey and Jeannie Combden in the BHIP business. Additionally, Casey and Jeannie Combden have participated in multiple webinars presenting the BHIP business plan and products and BHIP training, and solicited through the webinars multiple IBOs to "leave" "Amway" and "join" BHIP. These solicitations by Casey and Jeannie Combden violate their contract with Plaintiffs and the Rules of Conduct.

91.    On August 6, 2010, the CEO of BHIP, Terry LaCore (LACORE) sent an e-mail regarding "Casey Combden" to Joe Wood, Sherry Lacore –BHIP Support, and Michelle – BHIP Global Support.  He said:

"Hey All.

Sherry should be getting a spreadsheet from Casey on a couple of things.  He is our new leader out of Canada that is HUGE and is very organized.

1.    He put in about 170 people before he understood the importance of sponsorship.  He sponsored all of them to his position. He will be sending [sic] spreadsheet with about 170 sponsor changes, please note that all of these are approved and need no documentation. When you get the spreadsheet, if you have any questions contact him personally.

2.    He can grant up to 10 people the 1Star rank without paying.  If he sends 12 please go ahead and give him some leeway, if it was [sic] 20 then please contact me first.

I am very excited that [sic] I believe we are about to take North America past China in sales by the end of this year.  Please be ready and I appreciate all that you all do!!

HANG ON!!! lol"

92.     Later on August 6, 2010, Casey Combden sent an e-mail to Sherry LaCore, Joe Wood, Michelle, and Kosta Gara (GARA) at BHIP re the "Master List of the re-organization of Sponsorship."  He Said:

"Hi Sherry, Joe and Michelle,

First, Thank [sic] for the opportunity to build the amazing bHIP Global Business.  To say that were [sic] are excite [sic] is an understatement to the extreme.  After our meeting last night in Toronto hundreds of ex-Amway people are calling us like crazy.  The opportunity to grow the North American business is alive and well!

As per Kosta's instructions, I'm sending you this e-mail to help correct some of the challenges in the original registrations that we put into the business in a hurry.  At the time of inputting all of the distributors my staff did not understand the importance of who sponsor's [sic] each person.

As a result a number of the leaders have to be re-arranged in many of those distributorships in order to empower those of the current line of sponsorship.

Attached is an excel spreadsheet that outlines in detail the specifics of the changes that need to happen. . . .

Also as per Kosta's instructions I would like to request that the businesses outlined in GREEN on the spreadsheet be upgraded to the Global 1 Star Level.    These are strategic individuals in the organization.

. . . .

Please feel free to connect with us if you have any questions. We feel totally blessed to be working with you all and can't wait to meet you in person.

Cheers Casey and Jeannie"

93.    Also on August 6, 2010, BHIP sent Casey Combden an e-mail (which Casey sent to Jeannie Combden) regarding a BHIP "webinar."  It is an open invitation to join the BHIP webinar.  Jeannie Combden forwarded the BHIP webinar information she received from her husband to a distribution list that included multiple IBOs under contract with Plaintiffs.

94.    Later in August of 2010, on August 22, 2010, BHIP and TEAM IN MOTION sent Casey Combden an e-mail reminding him that he was scheduled to be a "panelists in the following webinar which will take place on Monday, August 23, 2010 9 p.m.-11 p.m. EDT" with the title and reference of "bHIP Global Training: Member Website & Team in motion.com Overview."

95.    During August of 2010 there were numerous e-mail communications between BHIP, LACORE and GARA, and Casey and Jeannie Combden regarding BHIP open opportunity meetings at the Paradise Banquet Hall in Toronto Canada and BHIP webinars.

96.    Beginning during the first week of August 2010 and continuing thereafter for several weeks, Casey Combden presented live open business opportunity meetings at the Paradise Banquet Hall in Toronto Canada where Casey Combden recruited IBOs under contract with Plaintiffs to join BHIP as independent agents/distributors.    Casey and Jeannie Combden solicited and recruited IBOs in their downline in Amway to attend the live open business opportunity meetings by phone, by text, by e-mail, by web postings, by facebook and by personal contact.

97.    During the live open business opportunity meetings presented by Casey Combden at the Paradise Banquet Hall in Toronto Canada, Casey Combden used banners, trademarks, products and other  information he received from GARA, BHIP and TEAM IN MOTION as tools to solicit and recruit Plaintiffs' IBOs.  He presented the BHIP products.  He presented the history of BHIP and its founders, LACORE and GARA.  He presented the BHIP marketing plan and compensation structure for independent BHIP agents/distributors.  He explained the "binary" BHIP plan and how it differed from the Amway compensation plan.

He solicited and encouraged the BHIP webinars and other BHIP meetings.  He presented and showed BHIP copyrighted video and audio materials, and BHIP copyrighted "banners."    He presented Kosta Gara videos and audios, and information about the "lifestyle" of GARA.   He presented information from TEAM IN MOTION.  He promoted TEAM IN MOTION and its website and its BHIP training materials.  He promoted BHIP conventions, BHIP meetings, the BHIP website and BHIP support and training materials, and the BHIP support staff in Texas.  These actions were taken to solicit, encourage and recruit IBOs under contract with Plaintiffs to join BHIP and leave Plaintiffs, and to breach their contracts and covenants with Plaintiffs.

98.    GARA appeared with Casey Combden on numerous occasions at the live open business opportunity meetings at the Paradise Banquet Hall in August of 2010.  He promoted TEAM IN MOTION and its business support and training materials designed for BHIP.  He is the owner and manager of TEAM IN MOTION, and makes a profit from the sale of business support materials to BHIP agents/distributors by TEAM IN MOTION.  GARA used banners, trademarks, products and other information he received from BHIP and TEAM IN MOTION as tools to solicit and recruit Plaintiffs' IBOs.  He presented the BHIP products.  He presented the history of BHIP and its founders, LACORE and GARA.  He presented the BHIP marketing plan and compensation structure for independent

BHIP agents/distributors.  He explained the "binary" BHIP plan and how it differed from the Amway compensation plan.  He solicited and encouraged the BHIP webinars and other BHIP meetings.  He presented and showed BHIP copyrighted video and audio materials, and BHIP copyrighted "banners."  He presented his own videos and audios, and information about his "lifestyle."  He exaggerated the compensation and financial benefit of being a BHIP agent/distributor.  He presented information from TEAM IN MOTION.  He promoted TEAM IN MOTION and its website and its BHIP training materials.  He promoted BHIP conventions, BHIP meetings, the BHIP website and BHIP support and training materials, and the BHIP support staff in Texas.  These actions were taken to solicit, encourage and recruit IBOs under contract with Plaintiffs to join BHIP and leave Plaintiffs, and to breach their contracts and covenants with Plaintiffs.

99.    GARA knew that Casey and Jeannie Combden had a contract with Plaintiffs and that the contract prohibited participation in a competing business or any other multilevel marketing business that sells products through independent distributors.  GARA knew that Casey and Jeannie Combden were Amway distributors in Canada, and he knew that they were the "#1" distributors for Amway in Canada.

100.        GARA, LACORE, BHIP and TEAM IN MOTION know that Casey and Jeannie Combden are soliciting IBOs who are under contract with Plaintiffs to "leave" "Amway" and "join" BHIP.  They know that Casey and Jeannie Combden are violating their contract with Plaintiffs.  They, and their agents, employees, and distributors have encouraged, and continue to encourage, Casey and Jeannie Combden to violate their contract with Plaintiffs, and have encouraged, and continue to encourage, Casey and Jeannie Combden to wrongfully and improperly solicit other IBOs in violation of their contracts with Plaintiffs. These Defendants are consciously indifferent to the contract between Casey and Jeannie Combden and Plaintiffs, and between Plaintiffs and other IBOs.

101.        GARA has also appeared on numerous occasions with Casey and Jeannie Combden at the webinar presentations of the BHIP business opportunity and training meetings, and is fully aware that Casey and Jeannie Combden are violating their contract with Plaintiffs by their participation in the BHIP webinar presentations and training.  GARA is fully aware that Casey and Jeannie Combden are encouraging other IBOs to violate their contract with Plaintiffs by participating in the webinar BHIP business presentations and BHIP training.

102.        GARA has used his company, TEAM IN MOTION to solicit and encourage Casey and Jeannie Combden and other IBOs under contract with

Plaintiffs to breach their contract with Plaintiffs and to misappropriate Plaintiffs' trade secrets. TEAM IN MOTION is a BHIP training company believed to be controlled by GARA and used by GARA to promote recruit and solicit for BHIP agents/distributors.

103.    Defendants, BHIP and LACORE, are fully aware of, and support GARA's and TEAM IN MOTION's actions in assisting Casey and Jeannie Combden in breaching their contract with Plaintiffs, misappropriating Plaintiffs' trade secrets, and encouraging and recruiting other IBOs to breach their contracts with Plaintiffs and to misappropriate Plaintiffs' trade secrets.

104.    Defendants, BHIP and LACORE, have taken no disciplinary action against GARA and TEAM IN MOTION for their unlawful conduct described herein, despite the opportunity to do so.

105.    Defendants, BHIP and LACORE, have approved, adopted and condoned the unlawful conduct of GARA and TEAM IN MOTION described herein, and they have jointly participated in the unlawful conduct.

106.    Defendant, BHIP, has accepted the registration as BHIP agents/distributors of Casey and Jeannie Combden, and has entered into agreements with Casey and Jeannie Combden for solicitation and recruitment of other IBOs under contract with Plaintiffs to leave "Amway" and to "join" BHIP.

The registration of Casey and Jeannie Combden as BHIP agents/distributors is a violation of Rule 6.5 of the Rules of Conduct.

107.    Defendant, BHIP, has accepted the registration as BHIP agents/distributors of various business that Casey Combden is a "consultant" for and the "contact person" for, and for which Casey Combden controls the Paypal account for and controls the BHIP commissions for, and has entered into agreements with these companies for solicitation of other IBOs under contract with Plaintiffs to leave "Amway" and to "join" BHIP.  The registration of these companies as BHIP agents/distributors is a violation of Rule 6.5 of the Rules of Conduct.  Under Rule 6.5, IBOs are not permitted to consult for business entities that compete with Plaintiffs.

107A. Defendant, BHIP, is paying Casey and Jeannie Combden $10,000.00 per week to breach their contract with Plaintiffs, to misappropriate Plaintiffs' trade secrets, and to recruit other IBOs under contract with Plaintiffs to do the same. These payments violate the contract between Casey and Jeannie Combden and Plaintiffs.

108.    Defendant, BHIP, has accepted the registration as BHIP agents/distributors by other IBOs under contract with Plaintiffs as BHIP agents/distributors in violation of the IBOs' contracts with Plaintiffs.  These IBOs were solicited and recruited by Casey and Jeannie Combden and their various

companies to breach their contracts with Plaintiffs, to solicit and recruit other IBOs to breach their contract with Plaintiffs, and to misappropriate Plaintiffs' trade secrets.

109.    Defendant, BHIP, has paid compensation to IBOs under contract with Plaintiffs for the sale of BHIP products, and the registration of BHIP distributors. These payments violate the contract between the IBOs and Plaintiffs.

110.    Casey and Jeannie Combden and other IBOs have used the LOS trade secrets and confidential information provided to them under their contract with Plaintiffs for the purpose of soliciting, recruiting and registering BHIP agents/distributors and building a BHIP multilevel marketing network of BHIP agents/distributors.  The use of the LOS trade secrets and confidential information of Plaintiffs violates the contract between Plaintiffs and Casey and Jeannie Combden and the other IBOs.

111.    Defendants, BHIP, LACORE, GARA and TEAM IN MOTION are fully aware that Casey and Jeannie Combden and other Amway IBOs are improperly using the LOS trade secrets and confidential information that is the property of Plaintiffs, and these Defendants are fully aware that such use of Plaintiffs' LOS trade secrets and confidential information is a violation of the contract between Casey and Jeannie Combden and Plaintiffs, and between

Plaintiffs and other IBOs.  These Defendants' actions are inducing and assisting the breach of the contract by the Combdens and other IBOs.

112.    Defendants, SUCCESS MASTERY, MANAGEMENT BUSINESS SERVICES, ANGEL VALLEY, BUSINESS EMPOWERMENT, ALLEN VENTURE and NEVADA WEALTH are fully aware that Casey and Jeannie Combden and other Amway IBOs are improperly using the LOS trade secrets and confidential information that is the property of Plaintiffs, and these Defendants are fully aware that such use of Plaintiffs' LOS trade secrets and confidential information is a violation of the contract between Casey and Jeannie Combden and Plaintiffs, and between Plaintiffs and other IBOs.  These Defendants' actions are inducing and assisting the breach of the contract by the Combdens and other IBOs.

113.    On August 24, 2010, Defendants, BHIP, LACORE, GARA and TEAM IN MOTION presented a BHIP Global webinar.  Tina Dietz was the spokesperson and presenter for BHIP.  She explained the BHIP opportunity, the BHIP products, and that she was part of the BHIP "leadership team."  She referred to "Casey Combden" as a "mentor" who coached her about the BHIP business and she said that "Casey" is "launching this business in North America."  She said that "BHIP Global" is a "golden opportunity" and that Defendant, TERRY LACORE was the founder of the company.  She also said that Defendant, KOSTA GARA

was the "master distributor."  She described BHIP as a "network marketing" business.  She described the products being sold and marketed by BHIP as a "BHIP energy blend," which is the "world's first all natural energy drink."  She then described a second product – the BHIP Nona Gia -- which she said is the "world's first organic Noni powder" which is called a "superfood" and that it is "absolutely jampacked with my antioxidants."  She then described the third product – BHIP Pleasur – as a female health supplement which "enhances a woman's sexual responsiveness" and which has been called "female Viagra."  She then described the business "opportunity" and the "seven ways of earning income inside the BHIP global business structure."  She described the cost of the product in "Canadian numbers."  She also referred to "other network marketing companies" in order to draw a comparison of the compensation plan.  She then discussed the "support" system.  At the top of the organization she referred to "TeamInMotion.com" and "business tools" and your "own personalized website." She then referred to the "live opportunity calls" and "weekly training calls" where BHIP distributors will get "mentored by -- from the best people in the industry, Casey Combden."  She said that Casey Combden is "building out in his leadership team."  She also again referred to "Casey" Combden.  Toward the end of the presentation, she said that "some of you know Casey Combden, maybe I've been spending a little too much time around him" and that "[y]ou can find Casey

Combden on Facebook."   She then said that she looked "forward to seeing all of you, or as many of you as possible at the live meeting on Thursday night up in Toronto."  Defendants, BHIP, LACORE, GARA and TEAM IN MOTION knew and approved and accepted the promotion of the BHIP business opportunity by use of the name of Casey Combden.

114.      On Tuesday August 17, 2010 Bernardine van der Voort, an IBO under contract with Plaintiffs, was called by her upline Diamond IBO soliciting her to attend a new business opportunity meeting.  The Diamond IBO said that he wanted Bernardine van der Voort to make money in a new business opportunity dealing with energy drinks.  Bernardine had first heard about the new business opportunity from an internet posting made by Jeannie Combden on August 1, 2010.  Bernardine attended the meeting on Thursday, August 19, 2010 that her upline Diamond invited her to.  The meeting was held at the Paradise Banquet Hall in Woodbridge, Ontario, Canada.  This is the same location where the Combdens and her upline Diamond held Amway training meetings on a weekly basis for many years.  She arrived early at the meeting on August 19, 2010 and observed familiar faces walking into the meeting room.  It seemed to have little difference from the weekly Amway workshops held in the same location.  Since July 2010, the Comdens have conducted weekly Amway workshops on the second Tuesday each month in the same location as the BHIP business opportunity

meeting held on August 19, 2010.  As Bernardine entered the meeting room she was greeted by her upline Diamond.  He requested that she sign in as a guest of his daughter.  He said that the new business she was about to see was in the name of his daughter.  But his daughter was not present at the meeting.  He also said that Casey Combden had set up a registration number for him in the new business.  There were approximately 80 people in attendance at the meeting on August 19, 2010.  As Bernardine looked around the room of those in attendance she recognized that approximate 75% of the room was filled with Amway IBOs who she knew and recognized from working with them in the Amway business in Canada.  At the meeting on August 19, 2010, Casey Combden was the speaker.  He presented the BHIP business plan and he explained the BHIP compensation plan.  He introduced three products that BHIP sold:  a powder to add to water to create an energy drink, a woman's supplement which he referred to as women's Viagra, and a Noni powder to add to water.  He used a PowerPoint and videos to solicit those in attendance at the meeting to become representatives or business owners with BHIP.  Defendant, GARA, was also present at the meeting as a representative of BHIP.  He spoke after Casey Combden and closed the meeting.  GARA affirmed the presentation of Casey Combden and solicited the audience to join BHIP.

114A. Bernardine van der Voort was also invited to attend a BHIP Webinar.  The webinar was conducted in two parts.  In the first part, Jennifer

LaCore of BHIP explained how to register into the business.  At one point, Casey Combden came on the line and made suggestions to Jennifer about how to register Canadians for the BHIP business.  The second part was narrated by GARA, and it covered the training site under the name of TEAM IN MOTION.  GARA explained how the training system worked and the costs at the different levels.

115.    During the BHIP meeting on August 19, 2010 and the BHIP webinar, Casey Combden and Defendant, GARA, explained that someone could "hold a spot" in the BHIP line of sponsorship for $49.95 US, and Casey Combden recommended a starter kit for $1350 and a monthly auto-ship for $34.50 a month.

116.    On Thursday night August 26, 2010, there was a "live" BHIP business opportunity and training meeting at 7601 Jane Street, Vaughn, Ontario Canada.  The meeting was conducted in the Prince room of the Paradise Banquet Hall and began at approximately 8 p.m.  Prior to the meeting beginning, Casey Combden and his wife Jeannie Combden arrived.  Casey Combden and Jeannie Combden unloaded microphones, speakers and other equipment and setup the equipment for the meeting.  Before the meeting began, multiple people arrived dressed in suits and they appeared to know one another based on their greetings and verbal exchanges.  Approximate 85 to 100 people attended the meeting.  The meeting began by Casey Combden welcoming everyone and thanking them for attending.  Casey Combden then played a video about BHIP.  At the conclusion of

the video, Casey Combden presented the BHIP business opportunity including a discussion of BHIP products, the BHIP compensation structure, and training to build a BHIP business. Approximately half way through Casey Combden's business presentation, he played a lifestyle video of Defendant, GARA, and then introduced Defendant, GARA, as a representative of BHIP. Defendant, GARA, then spoke for approximately 30 minutes and told the story of BHIP and his partnership with the CEO of BHIP, Defendant, TERRY LACORE. Casey Combden also showed a video of BHIP distributors at a convention in Hawaii. During Casey Combden's presentation he often referred to people in the audience on a first name basis. Based on his interaction with the audience, it was apparent that he had a previous relationship with most of the people in the audience. At some point during the meeting Jeannie Combden, explained the shipping process for BHIP products. While Casey Combden spoke, Jeannie Combden and Defendant, GARA, stood together at the back of the meeting room. Casey Combden solicited Martin Woodhouse to join BHIP and offered to personally assist him in the BHIP business. He requested that Mr. Woodhouse call him the next day for a follow-up discussion and gave him his cell phone number so that he could do so. During that discussion Casey Combden said that he was a distributor for Amway for 21 years and that he was the best at Amway. He said that he started BHIP 2 ½ weeks ago. He directed Woodhouse to a website and gave him a

password for the website where he could learn more about BHIP and training. The website is www.teaminmotion.com. Casey said that every night at 8 p.m. and 10:30 p.m. he presents the BHIP business opportunity and training through the web site. Later, after a break, Casey Combden took the stage and spoke again. He described the BHIP website. GARA also spoke again. GARA referred to Amway and said that more money could be made in BHIP than Amway. The audience asked several questions. The majority of the questions focused on a comparison between the way the Amway business works and the BHIP business. Mr. Combden and Defendant, GARA, explained the differences between the Amway business and the BHIP business. Defendant, GARA, said that BHIP came to Canada to find the best guy to lead BHIP in Canada and that Casey Combden was that guy.

117.     Defendants are fully aware of the solicitation and actions and conduct of Casey and Jeannie Combden and the other IBOs described herein. Defendants condone and encourage, and continue to condone and encourage, Casey and Jeannie Combden and the other IBOs to breach their contracts with Plaintiffs. Defendants condone and encourage, and continue to condone and encourage, Casey and Jeannie Combden and the other IBOs to disclose Plaintiffs' LOS trade secrets and other confidential information. Defendants condone and encourage, and continue to condone and encourage, Casey and Jeannie Combden

and the other IBOs to improperly use Plaintiffs' LOS trade secrets and other confidential information to solicit and register distributors in the BHIP business.

118.    Defendants are consciously indifferent to the trade secrets and confidential information belonging to Plaintiffs.  Defendants are consciously indifferent to the contractual obligations of Casey and Jeannie Combden and other IBOs, and have deliberately encouraged Casey and Jeannie Combden and other IBOs to breach their contracts with Plaintiffs and to improperly disclose the trade secrets and confidential information that is the property of Plaintiffs.

118A.    Defendants have misrepresented the benefits and qualities and characteristics of the BHIP products, services and business model and have used the material misrepresentations to induce consumers and customers to purchase BHIP products, and have used the material misrepresentations to induce IBOs under contract with Plaintiffs to become BHIP agents/distributors, to breach their contract with Plaintiffs, purchase and consume BHIP products and sell BHIP products to customers and consumers.  The products sold by BHIP compete with products sold by Plaintiffs, and Defendants have used material misrepresentations to induce consumers and customers to replace Plaintiffs' products with BHIP products.

## **SUCCESS MASTERY.**

119.    Casey Combden claims to be a "consultant" of SUCCESS MASTERY.  Casey Combden is, individually, the "contact person" at BHIP for SUCCESS MASTERY, and Casey Combden uses his personal address, phone number, and e-mail address as the BHIP "contact person" for SUCCESS MASTERY.

119A.    Casey Combden claims to have a "verbal" agreement with SUCCESS MASTERY to receive a "majority" of the "variable percentage" "profits" earned by SUCCESS MASTERY from BHIP.

119B.    Casey Combden controls the PayPal account between BHIP and SUCCESS MASTERY.  BHIP uses the PayPal account to pay SUCCESS MASTERY for commissions and bonuses and other compensation earned by SUCCESS MASTERY from BHIP.

119C.    Defendant, SUCCESS MASTERY, is controlled by Casey Combden.

119D.    SUCCESS MASTERY is the alter ego of Casey Combden.

119E.    Casey Combden sponsored SUCCESS MASTERY as a BHIP agent/distributor through another entity controlled and directed by Casey Combden, BUSINESS EMPOWERMENT.

119F.        SUCCESS MASTERY has recruited and solicited multiple IBOs under contract with Plaintiffs to join BHIP as BHIP agents/distributors. Such action violates Rule 6.5 of the Rules of Conduct. SUCCESS MASTERY knows that such action is a violation of the IBOs' contract with Plaintiffs. SUCCESS MASTERY knows that such solicitation is unlawful and is an inducement to IBOs to breach their contract with Plaintiffs.

119G.        SUCCESS MASTERY is an agent/distributor of BHIP.

119H.        SUCCESS MASTERY has registered and sponsored multiple IBOs under contract with Plaintiffs into BHIP as BHIP agents/distributors. These new BHIP agents/distributors then become part of the downline or BHIP group of SUCCESS MASTERY. SUCCESS MASTERY earns BHIP commissions and bonuses on the BHIP business volume of these BHIP agents/distributors, who are also IBOs under contract with Plaintiffs. SUCCESS MASTERY also earns BHIP commissions on downline BHIP agents/distributors in depth in the SUCCESS MASTERY legs or trees, and many of the BHIP agents/distributors in depth are IBOs under contract with Plaintiffs. SUCCESS MASTERY has induced these IBOs to breach their contract with Plaintiffs.

119I.        SUCCESS MASTERY has misappropriated Plaintiffs' trade secrets and used Plaintiffs' trade secrets to solicit, recruit and sponsor IBOs under contract with Plaintiffs to join BHIP as agents/distributors.

119J.        SUCCESS MASTERY has encouraged and recruited the IBOs in its BHIP downline or group to misappropriate Plaintiffs' trade secrets and to use Plaintiffs' trade secrets to solicit and recruit other IBOs to join BHIP and to register as BHIP agents/distributors.   Many have followed the counsel and direction of Casey Combden and SUCCESS MASTERY and have used Plaintiffs' trade secrets to solicit and recruit new BHIP agents/distributors.  Such actions are in violation of Rule 4.14 and 4.27 of the Rules of Conduct, and Plaintiffs' contracts with their IBOs.  SUCCESS MASTERY knows that these actions violate the Rules of Conduct.

119K. Defendants, BHIP, LACORE, GARA and TEAM IN MOTION know, and condone, accept and approve of the conduct and actions of SUCCESS MASTERY described herein.

## MANAGEMENT BUSINESS SERVICES.

120.        Casey Combden claims to be a "consultant" of MANAGEMENT BUSINESS SERVICES.  Casey Combden is, individually, the "contact person" at BHIP for MANAGEMENT BUSINESS SERVICES, and Casey Combden uses his personal address, phone number, and e-mail address as the BHIP "contact person" for MANAGEMENT BUSINESS SERVICES.

120A.        Casey Combden claims to have a "verbal" agreement with MANAGEMENT BUSINESS SERVICES to receive a "majority" of the "variable

percentage" "profits" earned by MANAGEMENT BUSINESS SERVICES from BHIP.

120B.    Casey Combden controls the PayPal account between BHIP and MANAGEMENT BUSINESS SERVICES.  BHIP uses the PayPal account to pay MANAGEMENT BUSINESS SERVICES for commissions and bonuses and other compensation earned by MANAGEMENT BUSINESS SERVICES from BHIP.

120C.    BHIP pays Casey Combden the $10,000.00 per week through the MANAGEMENT BUSINESS SERVICES PayPal account.

120D.    Defendant, MANAGEMENT BUSINESS SERVICES, is controlled by Casey Combden.

120E.    MANAGEMENT BUSINESS SERVICES is the alter ego of Casey Combden.

120F.    BHIP and GARA sponsored MANAGEMENT BUSINESS SERVICES as a BHIP agent/distributor through a BHIP "corporate account."

120G.    MANAGEMENT BUSINESS SERVICES has recruited and solicited multiple IBOs under contract with Plaintiffs to join BHIP as BHIP agents/distributors.   Such action violates Rule 6.5 of the Rules of Conduct. MANAGEMENT BUSINESS SERVICES knows that such action is a violation of the IBOs' contract with Plaintiffs.   MANAGEMENT BUSINESS SERVICES

knows that such solicitation is unlawful and is an inducement to IBOs to breach their contract with Plaintiffs.

120H.     MANAGEMENT     BUSINESS     SERVICES     is     an agent/distributor of BHIP.

120I.     MANAGEMENT BUSINESS SERVICES has registered and sponsored multiple IBOs under contract with Plaintiffs into BHIP as BHIP agents/distributors.     MANAGEMENT BUSINESS SERVICES recruited and sponsored Jeannie Combden, an IBO under contract with Plaintiffs at the time of the sponsorship, and Defendants, ANGEL VALLEY and BUSINESS EMPOWERMENT, entities that are the alter ego of Casey Combden, an IBO under contract with Plaintiffs at the time of the sponsorship.  These new BHIP agents/distributors then become part of the downline or BHIP group of MANAGEMENT BUSINESS SERVICES. MANAGEMENT BUSINESS SERVICES earns BHIP commissions and bonuses on the BHIP business volume of these BHIP agents/distributors and their downline agents/distributors, who are also IBOs under contract with Plaintiffs.     MANAGEMENT BUSINESS SERVICES also earns BHIP commissions on downline BHIP agents/distributors in depth in the MANAGEMENT BUSINESS SERVICES legs or trees, and many of the BHIP agents/distributors in depth are IBOs under contract with Plaintiffs.

MANAGEMENT BUSINESS SERVICES has induced these IBOs to breach their contract with Plaintiffs.

120J.    MANAGEMENT    BUSINESS    SERVICES    has misappropriated Plaintiffs' trade secrets and used Plaintiffs' trade secrets to solicit, recruit and sponsor IBOs under contract with Plaintiffs to join BHIP as agents/distributors.

120K.    MANAGEMENT BUSINESS SERVICES has encouraged and recruited the IBOs in its BHIP downline or group to misappropriate Plaintiffs' trade secrets and to use Plaintiffs' trade secrets to solicit and recruit other IBOs to join BHIP and to register as BHIP agents/distributors.  Many have followed the counsel and direction of Casey Combden and MANAGEMENT BUSINESS SERVICES and have used Plaintiffs' trade secrets to solicit and recruit new BHIP agents/distributors.  Such actions are in violation of Rule 4.14 and 4.27 of the Rules of Conduct, and Plaintiffs' contracts with their IBOs.  MANAGEMENT BUSINESS SERVICES knows that these actions violate the Rules of Conduct.

120L.    Defendants, BHIP, LACORE, GARA and TEAM IN MOTION know, and condone, accept and approve of the conduct and actions of MANAGEMENT BUSINESS SERVICES described herein.

**ANGEL VALLEY**

121.     Casey Combden claims to be a "consultant" of ANGEL VALLEY.  Casey Combden is, individually, the "contact person" at BHIP for ANGEL VALLEY, and Casey Combden uses his personal address, phone number, and e-mail address as the BHIP "contact person" for ANGEL VALLEY.

121A.     Casey Combden claims to have a "verbal" agreement with ANGEL VALLEY to receive a "majority" of the "variable percentage" "profits" earned by ANGEL VALLEY from BHIP.

121B.     Casey Combden controls the PayPal account between BHIP and ANGEL VALLEY.  BHIP uses the PayPal account to pay ANGEL VALLEY for commissions and bonuses and other compensation earned by ANGEL VALLEY from BHIP.

121C.     Defendant, ANGEL VALLEY, is controlled by Casey Combden.

121D.     ANGEL VALLEY is the alter ego of Casey Combden.

121E.     Casey Combden sponsored ANGEL VALLEY as a BHIP agent/distributor through another entity controlled and directed by Casey Combden, MANAGEMENT BUSINESS SERVICES.

121F.     ANGEL VALLEY has recruited and solicited multiple IBOs under contract with Plaintiffs to join BHIP as BHIP agents/distributors.  Such

action violates Rule 6.5 of the Rules of Conduct. ANGEL VALLEY knows that such action is a violation of the IBOs' contract with Plaintiffs. ANGEL VALLEY knows that such solicitation is unlawful and is an inducement to IBOs to breach their contract with Plaintiffs.

121G.        ANGEL VALLEY is an agent/distributor of BHIP.

121H.        ANGEL VALLEY has registered and sponsored multiple IBOs under contract with Plaintiffs into BHIP as BHIP agents/distributors. These new BHIP agents/distributors then become part of the downline or BHIP group of ANGEL VALLEY. ANGEL VALLEY earns BHIP commissions and bonuses on the BHIP business volume of these BHIP agents/distributors, who are also IBOs under contract with Plaintiffs. ANGEL VALLEY also earns BHIP commissions on downline BHIP agents/distributors in depth in the ANGEL VALLEY legs or trees, and many of the BHIP agents/distributors in depth are IBOs under contract with Plaintiffs. ANGEL VALLEY has induced these IBOs to breach their contract with Plaintiffs.

121I.        ANGEL VALLEY has misappropriated Plaintiffs' trade secrets and used Plaintiffs' trade secrets to solicit, recruit and sponsor IBOs under contract with Plaintiffs to join BHIP as agents/distributors.

121J.        ANGEL VALLEY has encouraged and recruited the IBOs in its BHIP downline or group to misappropriate Plaintiffs' trade secrets and to use

Plaintiffs' trade secrets to solicit and recruit other IBOs to join BHIP and to register as BHIP agents/distributors. Many have followed the counsel and direction of Casey Combden and ANGEL VALLEY and have used Plaintiffs' trade secrets to solicit and recruit new BHIP agents/distributors. Such actions are in violation of Rule 4.14 and 4.27 of the Rules of Conduct, and Plaintiffs' contracts with their IBOs. ANGEL VALLEY knows that these actions violate the Rules of Conduct.

121K.    Defendants, BHIP, LACORE, GARA and TEAM IN MOTION know, and condone, accept and approve of the conduct and actions of ANGEL VALLEY described herein.

**BUSINESS EMPOWERMENT**

122.    Casey Combden claims to be a "consultant" of BUSINESS EMPOWERMENT. Casey Combden is, individually, the "contact person" at BHIP for BUSINESS EMPOWERMENT, and Casey Combden uses his personal address, phone number, and e-mail address as the BHIP "contact person" for BUSINESS EMPOWERMENT.

122A.    Casey Combden claims to have a "verbal" agreement with to receive a "majority" of the "variable percentage" "profits" earned by BUSINESS EMPOWERMENT from BHIP.

122B.     Casey Combden controls the PayPal account between BHIP and BUSINESS EMPOWERMENT.    BHIP uses the PayPal account to pay BUSINESS EMPOWERMENT for commissions and bonuses and other compensation earned by BUSINESS EMPOWERMENT from BHIP.

122C.     Defendant, BUSINESS EMPOWERMENT, is controlled by Casey Combden.

122D.     BUSINESS EMPOWERMENT is the alter ego of Casey Combden.

122E.     Casey Combden sponsored BUSINESS EMPOWERMENT as a BHIP agent/distributor through another entity controlled and directed by Casey Combden, MANAGEMENT BUSINESS SERVICES.

122F.     BUSINESS EMPOWERMENT has recruited and solicited multiple IBOs under contract with Plaintiffs to join BHIP as BHIP agents/distributors.    Such action violates Rule 6.5 of the Rules of Conduct. BUSINESS EMPOWERMENT knows that such action is a violation of the IBOs' contract with Plaintiffs.    BUSINESS EMPOWERMENT knows that such solicitation is unlawful and is an inducement to IBOs to breach their contract with Plaintiffs.

122G.     BUSINESS EMPOWERMENT is an agent/distributor of BHIP.

122H.    BUSINESS EMPOWERMENT has registered and sponsored multiple IBOs under contract with Plaintiffs into BHIP as BHIP agents/distributors.    BUSINESS EMPOWERMENT has also sponsored other Defendants as BHIP agents/distributors including, ALLEN VENTURE, NEVADA WEALTH and SUCCESS MASTERY.    These new BHIP agents/distributors then become part of the downline or BHIP group of BUSINESS EMPOWERMENT. BUSINESS EMPOWERMENT earns BHIP commissions and bonuses on the BHIP business volume of these BHIP agents/distributors, many of whom are also IBOs under contract with Plaintiffs.    BUSINESS EMPOWERMENT also earns BHIP commissions on downline BHIP agents/distributors in depth in the BUSINESS EMPOWERMENT legs or trees, and many of the BHIP agents/distributors in depth are IBOs under contract with Plaintiffs.    BUSINESS EMPOWERMENT has induced these IBOs to breach their contract with Plaintiffs.

122I.    BUSINESS EMPOWERMENT has misappropriated Plaintiffs' trade secrets and used Plaintiffs' trade secrets to solicit, recruit and sponsor IBOs under contract with Plaintiffs to join BHIP as agents/distributors.

122J.    BUSINESS EMPOWERMENT has encouraged and recruited the IBOs in its BHIP downline or group to misappropriate Plaintiffs' trade secrets and to use Plaintiffs' trade secrets to solicit and recruit other IBOs to join BHIP and to register as BHIP agents/distributors.    Many have followed the counsel and

direction of Casey Combden and BUSINESS EMPOWERMENT and have used Plaintiffs' trade secrets to solicit and recruit new BHIP agents/distributors.  Such actions are in violation of Rule 4.14 and 4.27 of the Rules of Conduct, and Plaintiffs' contracts with their IBOs.  BUSINESS EMPOWERMENT knows that these actions violate the Rules of Conduct.

122K.    Defendants, BHIP, LACORE, GARA and TEAM IN MOTION know, and condone, accept and approve of the conduct and actions of BUSINESS EMPOWERMENT described herein.

**ALLEN VENTURE**

123.    Casey Combden claims to be a "consultant" of ALLEN VENTURE.  Casey Combden is, individually, the "contact person" at BHIP for ALLEN VENTURE, and Casey Combden uses his personal address, phone number, and e-mail address as the BHIP "contact person" for ALLEN VENTURE.

123A.    Casey Combden claims to have a "verbal" agreement with ALLEN VENTURE to receive a "majority" of the "variable percentage" "profits" earned by ALLEN VENTURE from BHIP.

123B.    Casey Combden controls the PayPal account between BHIP and ALLEN VENTURE.    BHIP uses the PayPal account to pay ALLEN VENTURE for commissions and bonuses and other compensation earned by ALLEN VENTURE from BHIP.

123C.       Defendant, ALLEN VENTURE, is controlled by Casey Combden.

123D.       ALLEN VENTURE is the alter ego of Casey Combden.

123E.       Casey Combden sponsored ALLEN VENTURE as a BHIP agent/distributor through another entity controlled and directed by Casey Combden, BUSINESS EMPOWERMENT.

123F.       ALLEN VENTURE has recruited and solicited multiple IBOs under contract with Plaintiffs to join BHIP as BHIP agents/distributors.  Such action violates Rule 6.5 of the Rules of Conduct.  ALLEN VENTURE knows that such action is a violation of the IBOs' contract with Plaintiffs.   ALLEN VENTURE knows that such solicitation is unlawful and is an inducement to IBOs to breach their contract with Plaintiffs.

123G.       ALLEN VENTURE is an agent/distributor of BHIP.

123H.       ALLEN VENTURE has registered and sponsored multiple IBOs under contract with Plaintiffs into BHIP as BHIP agents/distributors.  These new BHIP agents/distributors then become part of the downline or BHIP group of ALLEN VENTURE.  ALLEN VENTURE earns BHIP commissions and bonuses on the BHIP business volume of these BHIP agents/distributors, who are also IBOs under contract with Plaintiffs.  ALLEN VENTURE also earns BHIP commissions on downline BHIP agents/distributors in depth in the ALLEN VENTURE legs or

trees, and many of the BHIP agents/distributors in depth are IBOs under contract with Plaintiffs.    ALLEN VENTURE has induced these IBOs to breach their contract with Plaintiffs.

123I.    ALLEN VENTURE has misappropriated Plaintiffs' trade secrets and used Plaintiffs' trade secrets to solicit, recruit and sponsor IBOs under contract with Plaintiffs to join BHIP as agents/distributors.

123J.    ALLEN VENTURE has encouraged and recruited the IBOs in its BHIP downline or group to misappropriate Plaintiffs' trade secrets and to use Plaintiffs' trade secrets to solicit and recruit other IBOs to join BHIP and to register as BHIP agents/distributors.    Many have followed the counsel and direction of Casey Combden and ALLEN VENTURE and have used Plaintiffs' trade secrets to solicit and recruit new BHIP agents/distributors.  Such actions are in violation of Rule 4.14 and 4.27 of the Rules of Conduct, and Plaintiffs' contracts with their IBOs.  ALLEN VENTURE knows that these actions violate the Rules of Conduct.

123K.    Defendants, BHIP, LACORE, GARA and TEAM IN MOTION know, and condone, accept and approve of the conduct and actions of ALLEN VENTURE described herein.

**NEVADA WEALTH**

124.     Casey Combden claims to be a "consultant" of NEVADA WEALTH.  Casey Combden is, individually, the "contact person" at BHIP for NEVADA WEALTH, and Casey Combden uses his personal address, phone number, and e-mail address as the BHIP "contact person" for NEVADA WEALTH.

124A.     Casey Combden claims to have a "verbal" agreement with NEVADA WEALTH to receive a "majority" of the "variable percentage" "profits" earned by NEVADA WEALTH from BHIP.

123B.     Casey Combden controls the PayPal account between BHIP and NEVADA WEALTH.  BHIP uses the PayPal account to pay NEVADA WEALTH for commissions and bonuses and other compensation earned by NEVADA WEALTH from BHIP.

124C.     Defendant, NEVADA WEALTH, is controlled by Casey Combden.

124D.     NEVADA WEALTH is the alter ego of Casey Combden.

124E.     Casey Combden sponsored NEVADA WEALTH as a BHIP agent/distributor through another entity controlled and directed by Casey Combden, BUSINESS EMPOWERMENT.

124F.     NEVADA WEALTH has recruited and solicited multiple IBOs under contract with Plaintiffs to join BHIP as BHIP agents/distributors.  Such

action violates Rule 6.5 of the Rules of Conduct.  NEVADA WEALTH knows that such action is a violation of the IBOs' contract with Plaintiffs.  NEVADA WEALTH knows that such solicitation is unlawful and is an inducement to IBOs to breach their contract with Plaintiffs.

124G.    NEVADA WEALTH is an agent/distributor of BHIP.

124H.    NEVADA WEALTH has registered and sponsored multiple IBOs under contract with Plaintiffs into BHIP as BHIP agents/distributors.  These new BHIP agents/distributors then become part of the downline or BHIP group of NEVADA WEALTH.  NEVADA WEALTH earns BHIP commissions and bonuses on the BHIP business volume of these BHIP agents/distributors, who are also IBOs under contract with Plaintiffs.  NEVADA WEALTH also earns BHIP commissions on downline BHIP agents/distributors in depth in the NEVADA WEALTH legs or trees, and many of the BHIP agents/distributors in depth are IBOs under contract with Plaintiffs.  NEVADA WEALTH has induced these IBOs to breach their contract with Plaintiffs.

124I.    NEVADA WEALTH has misappropriated Plaintiffs' trade secrets and used Plaintiffs' trade secrets to solicit, recruit and sponsor IBOs under contract with Plaintiffs to join BHIP as agents/distributors.

124J.    NEVADA WEALTH has encouraged and recruited the IBOs in its BHIP downline or group to misappropriate Plaintiffs' trade secrets and to use

Plaintiffs' trade secrets to solicit and recruit other IBOs to join BHIP and to register as BHIP agents/distributors.   Many have followed the counsel and direction of Casey Combden and NEVADA WEALTH and have used Plaintiffs' trade secrets to solicit and recruit new BHIP agents/distributors.  Such actions are in violation of Rule 4.14 and 4.27 of the Rules of Conduct, and Plaintiffs' contracts with their IBOs.  NEVADA WEALTH knows that these actions violate the Rules of Conduct.

124K.    Defendants, BHIP, LACORE, GARA and TEAM IN MOTION know, and condone, accept and approve of the conduct and actions of NEVADA WEALTH described herein.

## V.

## CONDITIONS PRECEDENT

125.    All conditions precedent to the filing of this cause of action have been satisfied.

## VI.

## COUNT 1

## VIOLATION OF THE LANHAM ACT

126.    Plaintiffs fully incorporate the allegations in paragraphs 1 through 125 of this Complaint.

127.        All Defendants have engaged in unfair competition in violation of Section 43(a) of the Lanham Act.  15 U.S.C. § 1125(a).

128.        Defendants, directly and by and through their agents, officers, directors, managers, consultants and employees are engaging in unfair competition and unlawful misappropriation and use of Plaintiffs' trade secrets.

129.        Defendants, directly and by and through their agents, officers, directors, managers, consultants and employees are engaging in unlawful use of the name of Plaintiffs and comparisons to Plaintiffs' business and business model.

130.        Defendants, directly and by and through their agents, officers, directors, managers, consultants and employees are making false, or misleading representations of fact concerning the nature, characteristics or qualities of BHIP's products in its advertising and promotion for BHIP products.

131.        Defendants, directly and by and through their agents, officers, directors, managers, consultants and employees are making false, or misleading representations of fact concerning BHIP's business model, compensation and advantages to becoming a BHIP agent/distributor.

132.        Defendants, directly and by and through their agents, officers, directors, managers, consultants and employees have deceived or have the capacity to deceive customers as to the inherent qualities and characteristics of BHIP's products, services and business model.

133.     The representations of Defendants, directly and by and through their agents, officers, directors, managers, consultants and employees have had a material effect on the purchasing decisions of consumers and customers, and IBOs under contract with Plaintiffs, and the decisions of IBOs to join BHIP as agents/distributors.

134.     Defendants' conduct as described herein constitutes unfair competition in violation of section 43(a) the Lanham Act.

135.     As a result, Defendants are causing or are likely to cause injury to Plaintiffs for which Plaintiffs may have no adequate remedy at law.  Unless enjoined, Defendants' unlawful activities will continue to cause injury to Plaintiffs.

## VII.

## COUNT 2

## MISAPPROPRIATION OF TRADE SECRETS AND CONFIDENTIAL INFORMATION

136.     Plaintiffs fully incorporate the allegations in paragraphs 1 through 135 of this Complaint.

137.     Plaintiffs' confidential information constitutes trade secrets subject to protection under the law.

138.     As described herein, Defendants have misappropriated Plaintiffs' confidential information and trade secrets by acquiring such information

and trade secrets through improper means and improperly disclosing and using such confidential information and trade secrets.

139.     Defendants have unlawfully used in the past, and continue to use in the present, and in the future will continue to use Plaintiffs' trade secrets to compete against Plaintiffs.

140.     The LOS confidential information and trade secrets are used in Plaintiffs' business which gives Plaintiffs and Plaintiffs' IBOs an opportunity to obtain a competitive advantage over other competitors who do not have this information.

141.     Plaintiffs have taken adequate measures to maintain the secrecy of this confidential information and trade secrets, including prohibiting the use and disclosure of such confidential information and trade secrets.

142.     As described herein, Defendants misappropriated and misused, and continue to misappropriate and misuse, Plaintiffs' confidential information and trade secrets in violation of the law.

143.     As a direct and proximate result of the Defendants' wrongful conduct, Plaintiffs have suffered and will continue to suffer incalculable financial loss, loss of goodwill, loss of customers, and loss of the confidentiality of the confidential information and trade secrets, and other irreparable harm.

144.    As a matter of law, Plaintiffs have suffered irreparable harm as a result Defendants' actions, and Plaintiffs are entitled injunctive relief to protect Plaintiffs trade secrets.

145.    As a matter of law, Defendants' unlawful use of Plaintiffs' trade secrets is causing irreparable injury to Plaintiffs.

146.    Defendants are liable for actual damages caused by Defendants' misappropriation of Plaintiffs' trade secrets.

147.    Defendants also are liable to Plaintiffs for exemplary damages in an amount to be determined at trial.

## VIII.

## COUNT 3

## CONVERSION

148.    Plaintiffs fully incorporate the allegations in paragraphs 1 through 147 of this Complaint.

149.    As more fully described herein, Defendants have exercised unauthorized dominion and control over Plaintiffs' property, including the confidential information and trade secrets of Plaintiffs, and have thereby converted Plaintiffs' property to Defendants on use.

150.    Plaintiffs have an immediate right to possession of such property to the exclusion of Defendants.

151.     As a direct and proximate result of the Defendants' wrongful conduct, Plaintiffs have suffered and will continue to suffer incalculable financial loss, loss of goodwill, loss of customers, and loss of the confidentiality of the confidential information and trade secrets, and other irreparable harm.

152.     Plaintiffs have suffered irreparable harm as a result Defendants' actions, and Plaintiffs are entitled to injunctive relief.

153.     As a matter of law, Defendants' conversion of Plaintiffs' property is causing irreparable injury to Plaintiffs.

154.     Defendants are liable for actual damages caused by Defendants' conversion of Plaintiffs' property.

155.     Defendants also are liable to Plaintiffs for exemplary damages in an amount to be determined at trial.

## IX.

### COUNT 4

### TEXAS THEFT LIABILITY ACT, TEX. CIV. PRAC. & REM. CODE CH. 134 AND TEXAS PENAL CODE §31.03

156.     Plaintiffs fully incorporate the allegations in paragraphs 1 through 155 of this Complaint.

157.     As described more fully herein, Defendants have committed and continue to commit theft of Plaintiffs' trade secrets including, without

limitation, Plaintiffs' confidential information LOS information, as defined in Section 134.002(2) of the Texas Civil Practice and Remedies Code, and §31.03(a)(b) of the Texas Penal Code.

158.    In addition, Defendants have committed and continue to commit theft of Plaintiffs' LOS trade secrets and confidential information as defined by Chapter 134 of the Texas Civil Practice and Remedies Code, and §31.03(a)(b) of the Texas Penal Code.

159.    Plaintiffs had a possessory right to Plaintiffs' trade secrets and confidential information.

160.    Defendants unlawfully appropriated Plaintiffs' trade secrets and confidential information by taking the property without the Plaintiffs' effective consent.

161.    Defendants misappropriated Plaintiffs' trade secrets and confidential information with the intent to deprive Plaintiffs of the property.

162.    As a direct and proximate result of the Defendants' wrongful conduct, Plaintiffs have suffered and will continue to suffer incalculable financial loss, loss of goodwill, loss of customers, and loss of the confidentiality of the confidential information and trade secrets, and other irreparable harm.

163.    Pursuant to Chapter 134 of the Texas Civil Practice and Remedies Code, Defendants are liable to Plaintiffs for Plaintiffs' attorneys fees,

court costs and pre and post judgment interest, and statutory damages under §134.005(a)(1) and (b).

164.    Plaintiffs have suffered irreparable harm as a result Defendants' actions, and Plaintiffs are entitled to injunctive relief.

165.    As a matter of law, Defendants' theft of Plaintiffs' property is causing irreparable injury to Plaintiffs.

166.    Defendants are liable for actual damages caused by Defendants' theft of Plaintiffs' property.

167.    Defendants also are liable to Plaintiffs for exemplary damages in an amount to be determined at trial.

## X.

## COUNT 5

## TORTIOUS INTERFERENCE WITH EXISTING BUSINESS RELATIONSHIPS

168.    Plaintiffs fully incorporate the allegations in paragraphs 1 through 167 of this Complaint.

169.    It is clear that Defendants' actions described herein wrongfully interfere with Plaintiffs' contracts with its IBOs.   Plaintiffs have substantial contracts and business relationships with their IBOs.

170.     Defendants' actions described herein constitute tortious interference with Plaintiffs' existing business relationships.  A contract exists between Plaintiffs and all of its IBOs, including those targeted by Defendants.

171.     Defendants have willfully and intentionally interfered with the Plaintiffs' contracts and proximately caused harm to Plaintiffs.  As a result of Defendants interference, Plaintiffs have suffered, and will continue to suffer irreparable harm, incalculable financial loss, loss of confidentiality of their confidential information and trade secrets, loss of IBOs, loss of customers, loss of goodwill, and other non-compensable injury.

172.     Recovery of damages cannot provide Plaintiffs complete relief for the injuries caused by Defendants.  Plaintiffs have no adequate remedy at law, and thus seek equity.  Defendants' interference is causing immediate, irreparable, and permanent injury to Plaintiffs.  The full extent of Defendants' interference, and harm and injury to Plaintiffs remains unknown.  While damages may be calculated for a portion of the harm caused by Defendants, the irreparable harm and injury will continue unless the court exercises equity and enjoins Defendants' actions as requested herein.

173.     Plaintiffs are entitled to immediate equitable and injunctive relief to stop Defendants' tortious interference with Plaintiffs' contracts with its IBOs.

174.    As a direct and proximate result of the Defendants' wrongful conduct, Plaintiffs have suffered and will continue to suffer incalculable financial loss, loss of goodwill, loss of customers, and loss of the confidentiality of the confidential information and trade secrets and other irreparable harm.

175.    Plaintiffs have suffered irreparable harm as a result of Defendants' actions as described herein, and Defendants' actions have been done intentionally and with conscious disregard for the law.

176.    Plaintiffs have suffered irreparable harm as a result Defendants' actions, and Plaintiffs are entitled to injunctive relief.

177.    As a matter of law, Defendants' unlawful interference is causing irreparable injury to Plaintiffs.

178.    Defendants are liable for actual damages caused by Defendants' unlawful interference.

179.    Defendants also are liable to Plaintiffs for exemplary damages in an amount to be determined at trial.

## XI.

## <u>COUNT 6</u>

## <u>TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONSHIPS</u>

180.    Plaintiffs fully incorporate the allegations in paragraphs 1 through 179 of this Complaint.

181.    It is clear that Defendants' actions described herein wrongfully interfere with Plaintiffs' prospective contracts with its IBOs.  Plaintiffs have substantial prospective contracts and prospective business relationships with future IBOs.

182.    Defendants' actions described herein constitute tortious interference with Plaintiffs' prospective business relationships.  There is a reasonable probability that the Plaintiffs would have entered into business relationships with other IBOs but for the wrongful conduct and actions of the Defendants.

183.    As described herein, Defendants' conduct intentionally interferes with the prospective business relations of Plaintiffs.

184.    As described herein, Defendants' conduct is independently tortious or unlawful.

185.    As a direct and proximate result of the Defendants' wrongful conduct, Plaintiffs have suffered and will continue to suffer incalculable financial loss, loss of goodwill, loss of customers, and loss of the confidentiality of the confidential information and trade secrets and other irreparable harm.

186.    Plaintiffs have suffered irreparable harm as a result of Defendants' actions as described herein, and Defendants' actions have been done intentionally and with conscious disregard for the law.

187.        Plaintiffs have suffered irreparable harm as a result Defendants'
actions, and Plaintiffs are entitled to injunctive relief.

188.        As a matter of law, Defendants' unlawful interference is
causing irreparable injury to Plaintiffs.

189.        Defendants are liable for actual damages caused by Defendants'
unlawful interference.

190.        Defendants also are liable to Plaintiffs for exemplary damages
in an amount to be determined at trial.

## XII.

## COUNT 7

## UNFAIR COMPETITION

191.        Plaintiffs fully incorporate the allegations in paragraphs 1
through 190 of this Complaint.

192.        As more fully described herein, Defendants wrongful conduct
constitutes unfair competition and/or unfair and deceptive acts or practices.
Without limiting the generality of the foregoing, Plaintiffs allege that (a) Plaintiffs
have created goodwill, products, skills, relationships, know-how and confidential
information through extensive time, labor, skill and money; (b) Defendants have
wrongfully and improperly used, and are using all such goodwill, products, skills,
relationships, and know-how and confidential information in competition with

Plaintiffs, thereby gaining a special advantage in that competition because Defendants are not burdened with the expense incurred by Plaintiffs; and, (c) Plaintiffs have suffered commercial damage thereby.

193.     Defendants committed and continued to commit these unfair and deceptive acts or practices willfully and knowingly.

194.     By committing, and continuing to commit, these unfair and deceptive acts or practices, Defendants deliberately intend to harm Plaintiffs.

195.     As a direct and proximate result of the Defendants' wrongful conduct, Plaintiffs have suffered and will continue to suffer incalculable financial loss, loss of goodwill, loss of customers, and loss of the confidentiality of the confidential information and trade secrets, and other damages and irreparable harm.

196.     Plaintiffs have suffered irreparable harm as a result of Defendants' actions as described herein, and Defendants' actions have been done intentionally and with conscious disregard for the law.

197.     Plaintiffs have suffered irreparable harm as a result Defendants' actions, and Plaintiffs are entitled to injunctive relief.

198.     As a matter of law, Defendants' unlawful interference is causing irreparable injury to Plaintiffs.

199.        Defendants are liable for actual damages caused by Defendants'
unlawful interference.

200.        Defendants also are liable to Plaintiffs for exemplary damages
in an amount to be determined at trial.

## XIII.

## CONSPIRACY

201.        Plaintiffs fully incorporate the allegations in paragraphs 1
through 200 of this Complaint.

202.        As described herein, all Defendants were members of a
combination of two or more persons.

203.        The object of the combination was to accomplish an unlawful
purpose or a lawful purpose by unlawful means.

204.        All Defendants had a meeting of the minds on the object or
course of action, including the participation in the conspiracy.

205.        One or more of the members of the conspiracy committed an
unlawful, overt act to further the object or course of action of the conspiracy.

206.        As a direct and proximate result of the Defendants' wrongful
conduct, Plaintiffs have suffered and will continue to suffer incalculable financial
loss, loss of goodwill, loss of customers, and loss of the confidentiality of the

confidential information and trade secrets, and other damages and irreparable harm.

207.     Plaintiffs have suffered irreparable harm as a result of Defendants' actions as described herein, and Defendants' actions have been done intentionally and with conscious disregard for the law.

208.     Plaintiffs are entitled to exemplary damages against Defendants in an amount to be determined at trial.

## XIV.

## ASSISTING OR ENCOURAGING

209.     Plaintiffs fully incorporate the allegations in paragraphs 1 through 208 of this Complaint.

210.     As described more fully herein, one or more Defendants committed a tort, and assisted and encouraged Casey and Jeannie Combden and other IBOs to commit torts and other unlawful acts.

211.     Defendants had knowledge that the primary actor's conduct constituted an unlawful act or a tort.

212.     Defendants had the intent to assist and encourage the primary actor or actors in committing the unlawful act or the tort.

213.     Defendants gave the primary actor or actors assistance or encouragement.

214.         Defendants' assistance or encouragement was a substantial factor in causing the unlawful actions or the tort.

215.         As a direct and proximate result of the Defendants' wrongful conduct, Plaintiffs have suffered and will continue to suffer incalculable financial loss, loss of goodwill, loss of customers, and loss of the confidentiality of the confidential information and trade secrets, and other damages and irreparable harm.

216.         Plaintiffs have suffered irreparable harm as a result of Defendants' actions as described herein, and Defendants' actions have been done intentionally and with conscious disregard for the law.

217.         Plaintiffs are entitled to exemplary damages against Defendants in an amount to be determined at trial.

## XV.

## <u>CONCERT OF ACTION</u>

218.         Plaintiffs fully incorporate the allegations in paragraphs 1 through 217 of this Complaint.

219.         Defendants, jointly and severally, in conjunction with Casey and Jeannie Combden and other IBOs, committed an intentional tort or were grossly negligent, or engaged in unlawful conduct with a conscious disregard of the law and Plaintiffs' contractual rights.

220.     Defendants, jointly and severally, in conjunction with Casey and Jeannie Combden and other IBOs, planned, arranged, and agreed on a course of action by the parties acting together to further a scheme or cause that is unlawful and is in conscious disregard of the law and agreed to pursue a common plan or design to commit a tortious act and actively participated in the unlawful scheme or plan.

221.     Defendants, jointly and severally, in conjunction with Casey and Jeannie Combden and other IBOs, agreed (explicitly or tacitly) to cooperate in a particular plan are to accomplish a particular unlawful result and to commit a tort.

222.     As a direct and proximate result of the Defendants' wrongful conduct, Plaintiffs have suffered and will continue to suffer incalculable financial loss, loss of goodwill, loss of customers, and loss of the confidentiality of the confidential information and trade secrets, and other damages and irreparable harm.

223.     Plaintiffs have suffered irreparable harm as a result of Defendants' actions as described herein, and Defendants' actions have been done intentionally and with conscious disregard for the law.

224.     Plaintiffs are entitled to exemplary damages against Defendants in an amount to be determined at trial.

117

# XVI.

## <u>JOINT ENTERPRISE</u>

225.        Plaintiffs fully incorporate the allegations in paragraphs 1 through 224 of this Complaint.

226.        Defendants had a mutual understanding and a common business or pecuniary purpose to engage in unlawful actions and conduct.

227.        Defendants, along with Casey and Jeannie Combden and other IBOs, were engaged in a joint enterprise and had an agreement (express or implied) to commit unlawful acts as described more fully herein.

228.        Defendants, along with Casey and Jeannie Combden and other IBOs, had a common purpose to be carried out by their enterprise.

229.        Defendants, along with Casey and Jeannie Combden and other IBOs, had a community of pecuniary interest in that common purpose.

230.        Defendants, along with Casey and Jeannie Combden and other IBOs, had an equal right to direct and control the enterprise, and while engaged in the enterprise Defendants, Casey and Jeannie Combden or other IBOs committed unlawful acts or a tort against the Plaintiffs.

231.        As a direct and proximate result of the Defendants' wrongful conduct, Plaintiffs have suffered and will continue to suffer incalculable financial loss, loss of goodwill, loss of customers, and loss of the confidentiality of the

confidential information and trade secrets, and other damages and irreparable harm.

232.        Plaintiffs have suffered irreparable harm as a result of Defendants' actions as described herein, and Defendants' actions have been done intentionally and with conscious disregard for the law.

233.        Plaintiffs are entitled to exemplary damages against Defendants in an amount to be determined at trial.

## XVII.

## JOINT AND SEVERAL LIABILITY

234.        Plaintiffs fully incorporate the allegations in paragraphs 1 through 233 of this Complaint.

235.        As described more fully herein, Defendants are jointly and severally liable to Plaintiffs for the relief sought herein.

## XVIII.

## EXEMPLARY DAMAGES

236.        Plaintiffs fully incorporate the allegations in paragraphs 1 through 235 of this Complaint.

237.        Defendants conduct, as more fully described herein, is outrageous, malicious, or otherwise morally culpable conduct.

238.    Defendants conduct, as more fully described herein, was reckless, and a conscious disregard of the law.

239.    Defendants acted with specific intent to cause substantial injury to the Plaintiffs.

## XIX.

## DECLATORY RELIEF

240.    Plaintiffs pray that the Court declare the actions of Defendants described herein to be unlawful and a violation of the Lanham Act.

## XX.

## **JURY TRIAL DEMANDED**

241.    Plaintiffs demand a jury on all issues triable to a jury.

## XXI.

## PRAYER

For these reasons, Plaintiffs prays that Defendants be cited to appear and answer, and that Plaintiffs be awarded a Judgment against Defendants, jointly and severally, for the following:

1.    A preliminary injunction;

2.    A permanent injunction;

3.    Actual damages;

4.      Punitive damages;

5.      Attorneys fees;

6.      Prejudgment interest

7.      Post judgment interest;

8.      Declaratory relief;

9.      Cost of court and other litigation expenses; and,

10.     Such other, and further, relief, both general and special, whether at

law or in equity, to which Plaintiffs may be justly entitled to receive.

Respectfully Submitted,


<u>/s/ Charles Bundren</u>
Wm. Charles Bundren, Esq.
Attorney-in-Charge
STATE BAR NO. 03343200
**WM. CHARLES BUNDREN & ASSOCIATES LAW
GROUP PLLC**
2591 Dallas Parkway, Suite 300.
Frisco, TX 75034
Telephone:  972.624.5338
Fax:          972.624.5340
Cell:          214.808.3555
E-mail:       cbundren@aol.com

**ATTORNEY FOR PLAINTIFFS**