# United States District Court

### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| AMWAY CORP., ET AL. | § | |
| | § | |
| V. | § | CASE NO. 4:10-CV-549 |
| | § | (Judge Mazzant) |
| BHIP GLOBAL, INC., ET AL. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiffs' Motion for New Trial (Dkt. #209).   Having considered the relevant pleadings, the Court finds that the motion should be denied.

### Background

Plaintiffs Amway Corp. and Amway Canada Corporation (collectively referred to as "Amway") sued for alleged tortious interference and misappropriation of trade secrets against Defendants bHIP Global, Inc. ("bHIP"), Terry LaCore ("LaCore"), Team in Motion, LLC ("Team in Motion") and Kosta Gara ("Gara").   Amway, the world's largest multilevel marketing ("MLM") company, claims that Defendants interfered with a handful of its Canadian distributors by introducing them to a new multilevel marketing opportunity in the summer of 2010.   Amway claims that Defendants attempted to utilize an Amway distributor named Casey Combden ("Combden") to gain access to Amway's distributor database and thereafter improperly solicit other distributors.   Specially, Amway asserted the following claims: (1) tortious interference with contracts and/or business relations; (2)   tortious interference with prospective business relations; (3) trade secret misappropriation; (4) unfair competition claim; (5) Texas theft and liability act; (6) conversion; and (7) Lanham Act claim.

The Court conducted a jury trial from December 4, 2012, through December 13, 2012, after which the jury returned a verdict finding for Defendants on all claims on December 13,

2012.  The Court entered a judgment, based upon the jury's verdict, in favor of Defendants.  The Court also ordered that all costs are to be paid by the party incurring same.

On January 11, 2013, Plaintiffs filed a motion for new trial (Dkt. #209).  On January 28, 2013, Defendants filed a response (Dkt. #214).  On February 8, 2013, Plaintiffs filed a reply (Dkt. #220).

## Legal Standard

Pursuant to Fed. R. Civ. P. 59(a), the Court may grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." For instance, the Court has discretion to grant a new trial when it is necessary to prevent an injustice, when the jury's verdict is against the manifest weight of the evidence, when the trial was unfair, when prejudicial error occurred, or when the Court finds the damages imposed by the jury were excessive. *Gov't Fin. Servs. One Ltd. P'ship v. Peyton Place, Inc.*, 62 F.3d 767, 774-75 (5th Cir. 1995); *Jones v. Wal–Mart Stores, Inc.*, 870 F.2d 982, 986 (5th Cir. 1989); *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 612–13 (5th Cir. 1985).

## Discussion

Plaintiffs move, pursuant to Rule 59, for a new trial because (1) the verdict is against the weight of the evidence, (2) the trial was unfair, (3) prejudicial error was committed by Defendants and their counsel during the course of the trial, and (4) the Court's charge was erroneous.

### The Weight of the Evidence Compels the Granting of a New Trial

Plaintiffs assert that the jury verdict in this case is against the great weight of the evidence and when weighing the evidence, it must be concluded that the jury did not follow the evidence or the instructions of the Court.  Plaintiffs first argue that the great weight of the

evidence clearly establishes that Defendants tortiously interfered with Amway's contract with Combden and the other independent business owners ("IBOs") and that no credible contradictory evidence was offered by Defendants. Plaintiffs argue that the jury's verdict that Defendants did not interfere is against the great weight of the evidence and a new trial should be granted on this issue.

The Court disagrees.  The jury still could find that the products bHIP offered simply did not compete with the products that Amway offered and that they did not compete in other ways. Even if the Court assumed arguendo that all of Plaintiffs' arguments are correct, the Court still does not see that it warrants a new trial, because other evidence demonstrated that the jury's verdict was correct.   Plaintiffs' argument with respect to the interference claim–Amway had a contract and there is some evidence to support the fact that bHIP's proprietors "went after" the Amway distributors is only one part of the evidence that the jury had to consider.  The jury also heard testimony to the contrary–that Gara was talking to Combden about someone else and that their conversations regarding a different IBO turned into a conversation about Combden working for bHIP. From the Court's viewpoint, there was evidence to support both conclusions, and the jury made their choice.

Plaintiffs next assert that Defendants' misappropriation and conversion of Amway's trade secrets is established by the great weight of the evidence.  The Court disagrees.  The issue was not whether a trade secret was misappropriated but whether it was a trade secret. There is testimony and evidence to support a finding that it was not a trade secret.  Plaintiffs rely on their contract that said it was unique and proprietary, but that does not conclusively make it so. There was testimony that the contacts and information provided by Combden were his contacts that he developed, and the Court does not think there was evidence that he stole or took, or provided

3

bHIP with the replica of the way Amway organized and/or stored its information. Even if Combden utilized his contacts, the jury still had evidence to conclude it was not a trade secret, and the jury made that choice.

Plaintiffs next assert that the great weight of the evidence establishes that Defendants violated the Lanham Act by making false advertising statements regarding 1) bHIP energy products and 2) the bHIP business opportunity. The Court again disagrees. Defendants made the claims that certain ingredients were known to do certain things and that evidence provides the jury with a basis to find that there was no false advertising. Defendants did not say the drink/product specifically did those things. With regard to the drink claims, not having the studies/reports does not mean that the claims were false or that finding them false would be against the great weight of the evidence. As to the business opportunity claims, the Court finds that there is sufficient evidence to support a finding that the claims were not made in commercial advertisements, so no Lanham Act claim could survive.

Plaintiffs also assert, for the same reasons and evidence outlined above, that the great weight of the evidence establishes that Defendants engaged in unfair competition and the jury verdict cannot be supported and, thus, a new trial should be granted on this issue. The jury had evidence before it to decide these issues and could have gone either way. The Court cannot say that the verdict was against the great weight of the evidence.

**Violations of the Motion in Limine**

The Fifth Circuit gives trial judges broad discretion in deciding a motion for new trial based upon violations of their in limine orders and they will be overturned only for abuse of discretion. *J.T. Gibbons, Inc. v. Crawford Fitting Company*, 704 F.2d 787, 799 (5th Cir. 1983).

When determining whether a new trial should be granted based on violation of court orders, the trial court is given great deference to "gauge the prejudicial impact" of a party's or their counsel's improper conduct during the trial. *All Freight Systems v. James*, 115 F. App'x 182, 187 (5th Cir. 2004). A new trial is warranted on the ground of misconduct during the trial where the misconduct establishes the belief that the jury was influenced by "prejudice in reaching its verdict." *Id.* (citation omitted).  If the "improper comments...impair substantial rights and cast doubt on the verdict," a new trial is warranted. *Id.* When counsel or a witness for either party makes an improper statement or argument during trial, the court "must determine whether the remark impaired a substantial right of the opposing party."  *Dixon v. Int'l Harvester Co.*, 754 F.2d 573, 585 (5th Cir. 1985). If the violation of the court's in limine order -- i.e., improper questioning of witnesses or argument -- prejudices the opposing party's right to a fair trial, a motion for new trial should be granted. *Id.*

Plaintiffs first assert Defendants and their counsel offered testimony, evidence, suggestions and argument that the restrictive covenants in the Amway contract were unenforceable. Plaintiffs argue that this conduct was prejudicial to Amway and resulted in a jury verdict that did not follow the instructions of the Court. Plaintiffs argue that the Court granted the motion in limine that "Defendants cannot state, mention or argue" that the non-compete provision of the Amway contract is unenforceable (Dkt. #190). Plaintiffs argue that throughout the trial, Defendants and their counsel violated this Court's order granting Amway's motion in limine and prohibiting Defendants and their counsel from stating, mentioning or arguing that the non-compete provision in the Amway contract is unenforceable.

Although the Court did order that Defendants could not argue, state or mention that the non-compete provision was invalid or unenforceable, the Court did find that Defendants should

be permitted to present evidence and elicit testimony that there was not a valid and enforceable contract.  Moreover, most of the cites to the transcript are not violations of that order, but rather were arguments that people were unaware of the contract or of those provisions or that they had not signed the contract. The Court finds that this goes to the enforceability of the contract as a whole or, worst case, to IBOs/bHIP's knowledge of the provisions.  If Plaintiffs were concerned about what the jury was using that testimony to determine, the entire contract versus the non-compete, Plaintiffs should have asked for an instruction and preserved that issue.  Moreover, Plaintiffs failed to object to any alleged violation of a motion in limine.  Defendants are correct that a motion in limine does not preserve any error.  If Plaintiffs' counsel thought that such statements were in fact violations of the motion in limine, counsel should have objected at trial and given the Court and Defendants' counsel opportunity to correct any asserted error.  The Court does not see this as a basis for granting a new trial.[1]  Plaintiffs' reply asserts that the issue is one of the prejudicial effect of the continual violation of the Court's pretrial orders.  Although the Court does not see that Defendants violated the Court's orders, even if there were violations, Plaintiffs failed to object at the appropriate time.

**Failure to Issue Key Jury Instruction**

In the Fifth Circuit, two requirements must be met before a new trial will be granted based on an erroneous jury instruction: First, the movant must demonstrate that the charge as a whole creates substantial doubt whether the jury has been properly guided in its deliberations.

---

[1] Defendants assert that this complaint must be viewed under the plain error standard.  The Court agrees and does not see error that was so obvious and substantial that failure to notice it would affect the fairness, integrity or public reputation of this judicial proceeding and would result in manifest injustice.

And, second, the challenged instruction must have affected the outcome of the case. *Hatsell v. Doctor Pepper Bottling Co.*, 207 F.3d 269, 272 (5th Cir.  2000).

Plaintiffs first assert that Plaintiffs' claim for trade secret misappropriation was based upon Defendants' improper acquisition and unauthorized use of Plaintiffs' trade secret line of sponsorship ("LOS") information and that the Court did not give this instruction:

> Customer information and customer or distributor lists including contract terms, renewal dates, sales information, customer names and addresses and contact information, and customer billing information, and marketing information and strategies including pricing can be a trade secret.

The Court gave the following instruction:

> A "trade secret" is any formula, pattern, device or compilation of information which is used in one's business and presents an opportunity to obtain an advantage over competitors who do not know or use it.  In deciding whether something constitutes a trade secret, you may consider the following factors: (1) the extent to which the information is known outside of his business; (2) the extent to which it is known by employees and others involved in his business; (3) the extent of the measures taken by him to guard the secrecy of the information; (4) the value of the information to him and to his competitors; (5) the amount of effort or money expended by him in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

The Court disagrees with Plaintiffs.  The Plaintiffs' proposed instruction suggested an answer to the jury, which is inappropriate. The Court's charge should not suggest the answer. The instruction given by the Court highlighted the seminal cases from Texas defining trade secrets.  The Court's instructions followed Texas law.  In addition, customer lists are not as a matter of law trade secrets. The jury was still required to do the six-factor analysis.

With regard to their Lanham Act claim Plaintiffs requested the following instruction:

> You may find an unsubstantiated claim by Defendants to be false without additional evidence from Plaintiffs to that effect. A claim is unsubstantiated if the advertiser has no grounds for believing that its claim is true based on improper testing or has done no testing prior to making such claim.

7

Plaintiffs also proposed the following instruction based upon Federal Code:

> The regulation of supplement claims by the Food and Drug Administration ("FDA") is governed by the Dietary Supplement Health and Education Act of 1994 ("DSHEA"). Any statements that a product or ingredient is intended to diagnose, mitigate, treat, cure or prevent a disease is considered a "drug" claim. Drug claims are governed by the Federal Food, Drug and Cosmetic Act. That FDCA requires all drug claims to be substantiated through a testing and approval process governed by the FDA to be legally marketed and sold in the United States. Any unsubstantiated drug claims concerning the prevention, treatment or cure of a disease are prohibited by law and are deemed literally false.

Plaintiffs assert that the jury instructions issued by the Court were silent on the above points of law essential to Plaintiffs' Lanham Act claim. Plaintiffs submit that the jury was thus confused as to which party carried the burden to substantiate Defendants' medical or drug claims. Defendants' claims concerning the ability of their original/Blue, Red and Pink energy drinks to prevent, treat or cure various diseases or conditions were unsubstantiated and thus literally false.

The Court's charge provided the following instructions with regard to the Lanham Act claims:

> To establish this claim, Plaintiffs must prove by a preponderance of the evidence that Defendants interfered with Plaintiffs' ability to conduct business.  This is accomplished by proving:
>
> I.       Defendants made a false statement of fact in a commercial advertisement about their own products and/or related services and/or about the other party's products and/or related services, and
> ii.      Those statements actually deceived or have the tendency to deceive a substantial segment of their intended audience, and
> iii.     Those deceptive statements are material in that they are likely to influence the purchasing decisions of consumers, and
> iv.      The product is in interstate commerce, and
> v.       Plaintiffs have been or are likely to be injured as a result of the other party's false statements either by direct diversion of sales or by lessening of the goodwill associated with its products.

8

With respect to the first element, the statements at issue must be a fact. That is, the statements must be specific and measurable, capable of being proved false or of being reasonably interpreted as a statement of objective fact. Plaintiffs must prove that the statement is either literally false, or that if it is not literally false, it is misleading. If the statement is shown to be literally false, Plaintiffs need not produce evidence on the issue of the impact the statements had on consumers (i.e., elements (ii) and (iii)). But if the statements at issue are misleading, Plaintiffs must present evidence of actual deception (element (ii)) and materiality (element (iii)).

"Actual deception" requires proof that consumers were actually deceived by the statements at issue.

A statement is "material" if it is likely to influence the purchasing decision of consumers to which they were directed.

"Commercial advertisement" means commercial speech by a party in commercial competition with the other party for the purpose of influencing consumers to buy its goods or services. While the representations need not be made in a classical advertising campaign but may consist instead of more informed types of promotion, the representations must be disseminated sufficiently to the relevant purchasing public to constitute advertising or promotion with that industry. That the products in this case are in interstate commerce is not in dispute. You should proceed as if this element has been proved by a preponderance of the evidence.

A defense against a claim of false advertising is that the alleged statements constitute mere puffery. There are two types of puffery: (1) an exaggerated, blustering, and bolstering statement upon which no reasonable buyer would be justified in relying; and (2) a general claim of superiority over comparable products that is so vague that it can be understood as nothing more than mere expression of opinion.

The Court disagrees with Plaintiffs. The cases and instructions the Plaintiffs requested are all based on non-Fifth Circuit law. The Court followed the law of the Fifth Circuit. Also, the claims made by bHIP were for each individual ingredient, not for the drinks as a whole. Including an FDA/CFR edict would have suggested an answer for the jury or given too much information to them that may have been irrelevant to their analysis.

Plaintiffs next asserts that Casey Combden acted as an agent of Defendants at the time of the events in question relative to each of Plaintiffs' causes of action, and that Defendants are

accountable for Combden's acts performed as an agent for Defendants.  Plaintiffs proposed the following agency jury instructions based upon the Texas Pattern Jury Instructions:

> An "agent" means a person or entity that is authorized by another to transact business or manage some affair on the principal's behalf. An agency relationship may exist where there is either actual authority or apparent authority.
>
> "Actual authority" is a party's agreement that another act on behalf and for the benefit of the party. If a party so authorizes another to perform an act, that other party is also authorized to do whatever else is proper, usual, and necessary to perform the act expressly authorized.
>
> "Apparent authority," that is, if a party (1) knowingly permits another to hold himself out as having authority or (2) through lack of ordinary care, bestows on another such indications of authority that lead a reasonable prudent person to rely on the apparent existence of authority to his detriment. Only the acts of the party sought to be charged with responsibility for the conduct of another may be considered in determining whether apparent authority exists.

The Court initially included similar agency instructions in its draft jury instructions provided to counsel for the charging conference. The Court also initially included an agency question in its draft verdict form. Plaintiffs suggested deletion of the agency question in the draft verdict form but maintained their request for the agency jury instruction. The Court declined to include the agency jury instruction in its final charge to the jury. During the charge conference, the Court indicated that the agency instruction was not necessary because of the jury instruction regarding conspiracy.

The Court does not see it as error to exclude the issue of agency.  There was no evidence that Combden was the agent of bHIP, and Plaintiffs failed to plead the theory of agency in the pretrial order.  However, the Court did submit the conspiracy claim, and the jury found that there was no conspiracy.  To prove conspiracy, the jury was instructed as follows:

> Plaintiffs allege that Defendants acted in a conspiracy to misappropriate Plaintiffs' trade secrets and tortiously interfere with Plaintiffs' contracts.
>
> A civil "conspiracy" is a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means.  To be

part of a conspiracy, two or more persons (one of whom was a defendant) must have knowledge of, agreed to, and intended a common objective or course of action that resulted in the damages to Plaintiffs.  One or more persons involved in the conspiracy must have performed some act or acts to further the conspiracy.

**Admission of Testimony From Erlandson**

Plaintiffs contend that it was substantial error to permit the testimony of Defendants' witness Ann Erlandsson ("Erlandsson") on the Lanham Act.  The Court may grant a new trial if there was a substantial error in the admission of evidence. *Irvan v. Frozen Food Exp., Inc.*, 780 F.2d 1228, 1231 (5th Cir. 1986).

A month before trial, Defendants produced to Plaintiffs a new two-page detailed cost analysis prepared by bHIP comptroller Erlandsson at the request of Defendants' counsel Jenifer Grace. That two-page document was clearly intended to provide Lanham Act analysis under 15 U.S.C. § 1117, in response to the analysis set forth by Plaintiffs' expert Vincent Thomas. Plaintiffs filed an objection to the admission of Erlandsson's new analysis (Dkt. #199).  During oral argument from both parties, Defendants represented to the Court that Erlandsson was simply testifying as a fact witness in her capacity as the comptroller of bHIP. The Court ordered that Erlandsson could testify if Plaintiffs were provided with an opportunity to depose Erlandsson on her new analysis. After substantial briefing on Defendants' emergency motion to prevent Plaintiffs from deposing Erlandsson on her new analysis, the Court affirmed its order.

Plaintiffs deposed Erlandsson on December 1, 2012, the Saturday prior to the December 3, 2012 start of trial. Erlandsson testified that she had never heard of, much less performed any analysis under, the Lanham Act before Ms. Grace requested her new analysis on the eve of trial. Plaintiffs examined Erlandsson on each line item in her analysis.

11

Thomas testified on December 11, 2012.  Later that night at 10:30 p.m., the night before Erlandsson was scheduled to take the stand, Defendants provided Plaintiffs with a new Lanham Act analysis prepared by Erlandsson.  Plaintiffs assert that the new analysis was completely different than the analysis on which Plaintiffs deposed Erlandsson on December 3, 2012.

On December 12, 2012, at 3:16 a.m., Plaintiffs filed an emergency motion to exclude Erlandsson's new Lanham Act analysis that the next morning, on December 12, 2012, the Court ruled that Plaintiffs would be allowed to introduce the analysis and testimony provided by Erlandsson's, up to and including her deposition on December 3, 2012, but that Plaintiffs were prohibited from introducing any new information or opinions generated after December 3, 2012. Because the Court did not have a chance to review Erlandsson's deposition testimony, the Court asked Defendants point blank: "Are you representing to the Court that this analysis that [Ms. Erlandsson] has done as part of this demonstrative exhibit is something that she has already been deposed on?"  Defendants' counsel answered unequivocally "Yes, your Honor."

Defendants then proceeded to introduce Erlandsson's December 11, 2012 analysis to the jury. Plaintiffs asked for a sidebar and objected again as Defendants started into Erlandsson's new analysis.  During the sidebar, the Court examined the December 3rd and December 11th analyses side-by-side and questioned whether there were substantial differences. The Court asked Defendants when the new analysis had been prepared; Defendants admitted that it had been prepared well after  Erlandsson's December 3, 2012 deposition and shortly before she took the stand. The Court indicated that trial by ambush is not permitted, and that if Defendants proceeded with  Erlandsson's analysis, they were knowingly risking a mistrial. During a break following the sidebar, Plaintiffs assert that Defendants modified Erlandsson's analysis yet again to arrive at still another set of numbers.  Plaintiffs objected again, but the Court permitted

12

Erlandsson to testify before the jury.  Plaintiffs assert that it was substantial error for the Court to permit the testimony of Erlandsson on her new analysis.

Even if Court accepts Plaintiffs' argument as true and correct, the Court finds that Plaintiffs have failed to demonstrate any harm.  There are blanket statements that her testimony shed doubt on Thomas's testimony and was prejudicial, but the Court views that as just weighing the evidence.   And if it went to damages and no damages were found because Plaintiffs did not win on any causes of action, the Court does not see how there can be any harm. Since no liability was found by the jury, this error, if any, was harmless and does not warrant a new trial.[2] Plaintiffs also argue that Erlandsson's testimony was offered to impeach the testimony of Thomas.  The Court rejects that view, and even if this is correct, the Court does not see that this minor error, if any, necessitates a new trial.

The Court conducted a trial where the parties presented evidence and the jury was called upon to make choices.  The ten-person jury reached an unanimous verdict that Defendants were not liable on any of the twenty-four questions submitted for decision.  The jury could have decided this case either way.  Although Plaintiffs disagree with what the jury decided, the Court sees no reason to disturb the verdict of the jury.

It is therefore ORDERED that Plaintiffs' Motion for New Trial (Dkt. #209) is hereby DENIED.

---

[2] Although the Court did mention that Defendants could be risking a mistrial, the Court only viewed that possibility if the jury found Defendants liable and the Court had to address the issue of damages.  Since the jury did not reach the question of damages, the Court does not see it as an issue.

**SIGNED this 29th day of May, 2013.**

AMOS L. MAZZANT
UNITED STATES MAGISTRATE JUDGE